09-0905-cv
Arista Records LLC v. Doe 3

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2009

(Argued:  November 20, 2009          Decided: April 29, 2010)

Docket No. 09-0905-cv

_____

ARISTA RECORDS LLC, a Delaware limited liability company; ATLANTIC RECORDING CORPORATION, a Delaware Corporation; BMG MUSIC, a New York general partnership; CAPITOL RECORDS, LLC, a Delaware limited liability company; ELEKTRA ENTERTAINMENT GROUP INC., a Delaware corporation; INTERSCOPE RECORDS, a California general partnership; MAVERICK RECORDING COMPANY, a California joint venture; MOTOWN RECORD COMPANY, L.P., a California limited partnership; SONY BMG MUSIC ENTERTAINMENT, a Delaware general partnership; UMG RECORDINGS, INC., a Delaware corporation; VIRGIN RECORDS AMERICA, INC., a California corporation; WARNER BROS. RECORDS INC., a Delaware corporation; and ZOMBA RECORDING LLC, a Delaware limited liability company,

                              Plaintiffs-Appellees,

- v. -

DOE 3,

                              Defendant-Appellant,

DOES 1-2 and DOES 4-16,

                              Defendants.
_____

Before:  KEARSE, KATZMANN, and LIVINGSTON, Circuit Judges.

        Appeal from an order of the United States District Court for the Northern District of New York, Glenn T. Suddaby, Judge,

rejecting anonymous defendant-appellant's objections to magistrate judge's denial of motion to quash subpoena served on Internet service provider for disclosure of identities of Internet users allegedly downloading and/or distributing music online in violation of plaintiffs' copyrights.

Affirmed.

> TIMOTHY M. REYNOLDS, Denver, Colorado (Katheryn J. Coggon, Thomas M. Kerr, Holme Roberts & Owen, Denver, Colorado, on the brief), _for_ Plaintiffs-Appellees.
>
> RICHARD A. ALTMAN, New York, New York, _for_ Defendant-Appellant.

KEARSE, _Circuit Judge_:

Defendant "Doe 3," whose identity is not known to plaintiffs Arista Records LLC _et al._, appeals from an order of the United States District Court for the Northern District of New York, Glenn T. Suddaby, _Judge_, rejecting Doe 3's objections to the denial by United States Magistrate Judge Randolph F. Treece of Doe 3's motion (originally brought by other anonymous defendants) to quash a subpoena served on his Internet service provider to obtain information sufficient to disclose his identity. The magistrate judge ruled that defendants' qualified First Amendment right of anonymity was outweighed by, _inter alia_, plaintiffs' allegations that defendants were downloading and/or distributing music over the Internet in violation of plaintiffs' copyrights and plaintiffs' need for the information in order to enforce their

rights. On appeal, Doe 3 contends principally that the allegations in the Complaint are not sufficient to overcome his First Amendment right of anonymity; in addition, he contends that the reference of his motion to the magistrate judge and the district judge's review of the magistrate judge's decision were procedurally flawed. Finding no merit in Doe 3's contentions, we affirm.

## I. BACKGROUND

Plaintiffs are recording companies that commenced the present action in July 2008, alleging that 16 defendants--known to plaintiffs at that time not by name but only by the Internet Protocol ("IP") addresses assigned to them at certain specific times by their Internet service provider ("ISP")--had infringed plaintiffs' copyrights by, without plaintiffs' permission or consent, downloading and/or distributing to the public various music recordings through an online file-sharing network. (See Complaint ¶¶ 18, 22.) File-sharing (or "peer-to-peer" or "P2P") networks allow users to exchange files directly between their computers without intermediate servers. Attached to the Complaint is an "Exhibit A" listing for each "Doe" defendant, inter alia, his or her IP address at a stated date and time, the name of the file-sharing network used ("Gnutella" or "AresWarez"), the titles of 6-10 songs downloaded from the IP address, and, for each song, which plaintiff was the copyright owner. The Complaint requests,

*inter alia*, damages and injunctive relief prohibiting further direct and indirect infringement of plaintiffs' copyrights.

In order to identify the defendants, plaintiffs sought authorization to serve a subpoena on defendants' common ISP, the State University of New York at Albany ("SUNYA"), for disclosure of each defendant's name, current and permanent address, telephone number, email address, and Media Access Control address identifying the device engaged in the online communication. In support of their subpoena request, plaintiffs submitted a July 8, 2008 declaration by Carlos Linares ("Linares Decl."), Vice President for Anti-Piracy Legal Affairs, Recording Industry Association of America, Inc. ("RIAA"), who was responsible for the collection of facts alleged in the Complaint's Exhibit A. Linares described, *inter alia*, the retention of a third-party investigator that had proceeded to detect numerous copyrighted music files in the various Doe defendants' file-sharing folders on peer-to-peer networks, including the songs listed in Exhibit A, and he described the RIAA's review of the investigator's evidence to verify that each individual was infringing. (See Linares Decl. ¶¶ 11, 14-15, 18-19.) The court issued the subpoena but required SUNYA to "notify each Doe Defendant that it intends to disclose the requested ISP identifying information to Plaintiffs; and . . . send to each Doe Defendant a copy of the subpoena . . . ." Order dated July 22, 2008, at 2.

Thereafter, plaintiffs voluntarily dismissed the action against most of the defendants. The remaining defendants,

- 4 -

eventually including Doe 3, moved to quash the subpoena or, in the alternative, to have the court order a severance requiring that each defendant be sued separately. In support of the motion to quash, these defendants argued that the First Amendment affords a qualified right to use the Internet anonymously and that the court that has issued a subpoena must quash or modify the subpoena when it "requires disclosure of privileged or other protected matter, if no exception or waiver applies," Fed. R. Civ. P. 45(c)(3)(A)(iii). While acknowledging that "[t]he First Amendment right to communicate anonymously is, of course, not a license to . . . infringe copyrights," the moving defendants argued principally that their privilege "can only be overcome by a substantial and particularized showing," sufficient to "plead a prima facie case of copyright infringement." (Amended Memorandum of Law of Doe Defendants 3, 7, 11, and 15 in Support of Motion To Quash ("Does' Amended Memorandum") at 10 (internal quotation marks omitted).) They argued that the Complaint "fall[s] far short of that showing." (Id.)

The moving defendants argued that--in accordance with what they characterized as "the heightened pleading standards imposed since . . . Bell Atlantic [Corp.] v. Twombly, [550 U.S. 544] (2007)" (Does' Amended Memorandum at 15)--in order to overcome the First Amendment privilege, "plaintiffs must state, on personal knowledge, a specific claim for copyright infringement against each and every Doe defendant" (id. at 13-14). The moving defendants contended that plaintiffs were required

to present specific evidence, including a declaration from whoever examined the files available for download from each defendant's computer, listened to the files, verified that they were copyrighted songs, determined that the copyrights were registered (and to which plaintiffs), to list the songs that a particular defendant made available for download, and to annex corresponding copyright registration certificates for the songs.

(Id. at 14.) They also argued that the Complaint "fails to allege any actual distribution of song files to the public" and hence "does not state a claim upon which relief can be granted," id. at 17; and that "[i]n addition to establishing that [plaintiffs'] action can withstand a motion to dismiss for failure to state a claim," plaintiffs, in order to secure disclosure of the Doe defendants' identities, "must produce sufficient evidence supporting each element of" their claims, id. at 12 (emphasis and internal quotation marks omitted).

As amended, defendants' notice of motion stated that the motion to quash would be returnable before District Judge Suddaby. However, the motion was referred to Magistrate Judge Treece.

A. The Magistrate Judge's Denial of Defendants' Motion To Quash

In a Memorandum Decision and Order dated February 18, 2009, see Arista Records LLC v. Does 1-16, No. 1:08-CV-765(GTS/RFT), 2009 WL 414060 (N.D.N.Y. Feb. 18, 2009) ("Arista I"), the magistrate judge denied the motion to quash the subpoena. Noting the need to balance "the modest First Amendment right to remain anonymous" against "a copyright owner's right to disclosure of the identity of a possible trespasser of its

intellectual property interest," Arista I, 2009 WL 414060, at *3, the magistrate judge looked to the five-factor test set out by then-District Judge Denny Chin in Sony Music Entertainment Inc. v. Does 1-40, 326 F.Supp.2d 556 (S.D.N.Y. 2004) ("Sony Music"), and evaluated the defendants' expectation of privacy, the prima facie strength of plaintiffs' claims of injury, the specificity of the discovery request, plaintiffs' need for the information, and its availability through other means.

The magistrate judge found that all five factors counseled against quashing the subpoena. He noted that plaintiffs had sufficiently pleaded copyright infringement claims, alleging ownership of the copyrights, copying, and distribution of the protected works by the Doe defendants without the consent of the owners. See Arista I, 2009 WL 414060, at *1, *5. The court also noted that plaintiffs' allegations of distribution were supported by Exhibit A to the Complaint, specifying their investigator's "sampl[ing of] some of the downloads from shared folders," id. at *5. The magistrate judge also found that the disclosure request was reasonable in scope, that identification of the alleged infringers was indispensable for the vindication of plaintiffs' copyright rights, and that the identifying information was unavailable through alternative means.

The magistrate judge found that these factors were not outweighed by the First Amendment rights of the Doe defendants. He stated that the "Doe Defendants have a minimal expectation of privacy, especially when they allegedly engaged in P2P network

- 7 -

sharing" because "the notion of allowing others to have access to one's database by virtue of the Internet in order to pluck from a computer information and data that the computer owner or user wishes to share renders void any pretext of privacy." Id. at *6. Accordingly, the magistrate judge denied the motion to quash.

B.  The District Court's Review of the Magistrate Judge's Order

Pursuant to Fed. R. Civ. P. 72, Doe 3 objected to the magistrate judge's denial of the motion to quash, and sought "de novo review," "reversing" and "overruling" that order. As a threshold procedural matter, Doe 3 argued that the motion to quash had been referred to the magistrate judge "without the consent of either party, and without an actual order of referral from the District Judge" (Supporting Declaration of Richard A. Altman dated March 2, 2009, ¶ 3). He also argued that the motion should not have been referred to a magistrate judge for decision because "[t]he motion, while styled as one to quash a subpoena, actually challenged the legal sufficiency of the complaint in the nature of a motion under F.R.Civ.P. 12(b)(6). As such it is dispositive" because "the motion to quash would for practical purposes be determinative of the outcome of the present litigation . . . ." (Doe 3's Objections to Magistrate Judge's Memorandum Decision and Order at 1, 2). Doe 3 argued that the magistrate judge thus lacked jurisdiction to decide the motion to quash and that Doe 3 was entitled to have the district judge review the magistrate judge's decision de novo. As to substance, Doe 3 contended, to

- 8 -

the extent pertinent to this appeal, that the magistrate judge's order erred in "its conclusion that the complaint states a legally cognizable claim, and that 'making available' music files is automatically copyright infringement." (Id. at 5.)

In a Decision and Order dated March 5, 2009 ("Arista II"), District Judge Suddaby rejected Doe 3's objections. The court first rejected Doe 3's contention that his motion--which had requested the quashing of the subpoena or the severance of the claims against the various defendants--was a dispositive motion. See, e.g., Arista II at 2 ("generally a motion to quash a subpoena is a non-dispositive matter"); id. at 3 (a "motion for severance of claims . . . is also properly viewed as a non-dispositive matter since the practical effect of the motion, if granted, would not be to terminate Plaintiff's claims against Defendants (nor would it be to necessarily terminate the current action)"). The court rejected the proposition that the motion to quash was in essence a motion to dismiss under Rule 12(b)(6) and hence was a dispositive motion, noting that that Rule, by its terms, confers the right to move for dismissal for failure to state a claim on "'a party.'" Id. at 2. The defendants, not having been served with process, were "not yet 'parties'" and thus could "not properly move for dismissal for failure to state a claim." Id. at 2-3. Given that the motion to quash or sever was a nondispositive motion, the court implicitly rejected Doe 3's contention that the magistrate judge lacked authority to rule on it.

Further, because the motion to quash or sever was a nondispositive motion, the district judge concluded that the proper standard for reviewing the magistrate judge's order was "clear error, not de novo." Id. at 3. The court found no clear error in the magistrate judge's order. It also determined that it would reach the same conclusion "even [upon] de novo review." Id.

This appeal followed. The order is appealable under the collateral order doctrine, as the subpoena at issue "'is directed against a third party who is unlikely to risk being held in contempt to vindicate someone else's rights.'" In re Grand Jury Subpoena Duces Tecum Dated May 29, 1987, 834 F.2d 1128, 1130 (2d Cir. 1987) (quoting In re Katz, 623 F.2d 122, 124 (2d Cir. 1980) (brackets in In re Grand Jury omitted)). On motion of Doe 3, this Court stayed SUNYA's compliance with the subpoena with respect to information pertaining to Doe 3 pending resolution of the appeal.

## II. DISCUSSION

On appeal, Doe 3 principally argues that the Complaint does not state a claim sufficient to overcome his First Amendment privilege of anonymity. He also pursues his contentions that his motion to quash was improperly referred to the magistrate judge and that the district court thus erred by not reviewing the magistrate judge's decision de novo. We find no merit in Doe 3's contentions.

## A. The Procedural Challenge

The district court may designate a magistrate judge to hear and decide a pretrial matter that is "not dispositive of a party's claim or defense." Fed. R. Civ. P. 72(a); see 28 U.S.C. § 636(b)(1)(A). Dispositive matters may be referred to a magistrate judge only for recommendation, not for decision; such matters principally include motions for injunctive relief and motions for dismissal. See 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). "Matters concerning discovery generally are considered 'nondispositive' of the litigation." Thomas E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 525 (2d Cir.), cert. denied, 498 U.S. 846 (1990). Like most discovery requests directed to opposing parties, subpoenas to nonparties are designed to elicit information. A motion to quash a subpoena in an action seeking relief other than production of the subpoenaed information is not normally a dispositive motion.

As to a nondispositive matter, "[t]he district judge in the case must consider timely objections and modify or set aside any part of the [magistrate judge's] order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). As to a dispositive matter, any part of the magistrate judge's recommendation that has been properly objected to must be reviewed by the district judge de novo. See id. 72(b).

In the present case, the Doe defendants' motion to quash plaintiffs' subpoena to SUNYA was not a dispositive motion. Although Doe 3 contends to the contrary, arguing that the

- 11 -

magistrate judge "necessarily had to decide whether the complaint stated a claim or not" (Doe 3 brief on appeal at 45), that argument ignores, inter alia, all factors other than the viability of the Complaint. Applying the five-factor Sony Music test, the magistrate judge could have granted the motion to quash despite the sufficiency of the Complaint if it had found, for example, that the subpoena was unduly broad or that plaintiffs had easy access to the Doe defendants' identities through other means. Quashing the subpoena on such a basis plainly would not have ended the action.

In addition, Doe 3's contention that the motion to quash was the equivalent of a motion to dismiss for failure to state a claim ignores arguments he made to the magistrate judge. He argued that in order to overcome the qualified privilege, a plaintiff must produce evidence supporting each element of its claim "[i]n addition to establishing that its action can withstand a motion to dismiss for failure to state a claim." (Does' Amended Memorandum at 12 (internal quotation marks omitted) (emphasis in Memorandum).)

Finally, even if Doe 3 were correct in characterizing the motion to quash as a dispositive matter, the only consequence would have been that review by the district judge should have been de novo. Given that the district judge stated that he would conclude that the motion should be denied even if he reviewed the matter de novo, Doe 3's procedural contention provides no basis for reversal. See generally Fed. R. Civ. P. 61 ("At every stage

- 12 -

of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.").

B.    The Substantive Challenge

A district court's ruling on a motion to quash a subpoena is reviewable for abuse of discretion. See, e.g., In re: Subpoena Issued to Dennis Friedman, 350 F.3d 65, 68 (2d Cir. 2003). A court abuses its discretion when its decision rests on an error of law or on a clearly erroneous factual finding, see, e.g., Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990); In re Fitch, Inc., 330 F.3d 104, 108 (2d Cir. 2003), "or [when] its decision-- though not necessarily the product of a legal error or a clearly erroneous factual finding--cannot be located within the range of permissible decisions," id. (internal quotation marks omitted); see, e.g., Zervos v. Verizon New York, Inc., 252 F.3d 163, 169 (2d Cir. 2001). We see no abuse of discretion in the refusal to quash the subpoena in the present case.

The fundamental copyright principles are clear. The owner of a copyright has the exclusive right to--or to license others to--reproduce, perform publicly, display publicly, prepare derivative works of, and distribute copies of, his copyrighted work. See 17 U.S.C. § 106. To establish infringement of copyright, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publications, Inc. v. Rural Telephone Service Co., 499 U.S. 340, 361 (1991); see, e.g., Harper

- 13 -

& Row, Publishers, Inc. v. Nation Enterprises, 471 U.S. 539, 548 (1985). "The word 'copying' is shorthand for the infringing of any of the copyright owner's five exclusive rights" described in § 106. A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1013 (9th Cir. 2001) ("Napster") (internal quotation marks omitted).

Further, "[a]lthough '[t]he Copyright Act does not expressly render anyone liable for infringement committed by another,'" Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 930 (2005) ("Grokster") (quoting Sony Corp. v. Universal City Studios, 464 U.S. 417, 434 (1984)), it is well established, based on "the common-law doctrine that one who knowingly participates or furthers a tortious act is jointly and severally liable with the prime tortfeasor," that "one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer," Gershwin Publishing Corp. v. Columbia Artists Management, Inc., 443 F.2d 1159, 1162 (2d Cir. 1971) ("Gershwin") (internal quotation marks and footnote omitted) (emphases ours); see, e.g., Grokster, 545 U.S. at 930. The knowledge standard is an objective one; contributory infringement liability is imposed on persons who "know or have reason to know" of the direct infringement, Napster, 239 F.3d at 1020 (emphasis added); see, e.g., In re: Aimster Copyright Litigation, 334 F.3d 643, 650 (7th Cir. 2003) ("[w]illful blindness is knowledge"), cert. denied, 540 U.S. 1107 (2004); Cable/Home Communication Corp. v. Network Productions, Inc., 902

- 14 -

F.2d 829, 845 (11th Cir. 1990) ("Cable/Home"); Gershwin, 443 F.2d at 1162. Such "liability exists if the defendant engages in 'personal conduct that encourages or assists the infringement,'" Napster, 239 F.3d at 1019 (quoting Matthew Bender & Co. v. West Publishing Co., 158 F.3d 693, 706 (2d Cir. 1998)). The "'resolution of the issue . . . depends upon a determination of the function that [the alleged infringer] plays in the total [reproduction] process.'" Gershwin, 443 F.2d at 1162 n.8 (quoting Fortnightly Corp. v. United Artists Television, Inc., 392 U.S. 390, 396-397 (1968) (alterations in Gershwin)).

The relevant First Amendment principles are also well established. The Supreme Court has recognized that the First Amendment provides protection for anonymous speech. See, e.g., Buckley v. American Constitutional Law Foundation, Inc., 525 U.S. 182, 199-200 (1999); McIntyre v. Ohio Elections Commission, 514 U.S. 334, 341-342 (1995); see also NAACP v. Alabama, 357 U.S. 449, 462, 466 (1958) (compelled disclosure of membership list would impinge on First Amendment right of association). In the context of political speech, the Supreme Court has recognized that "[a]nonymity is a shield from the tyranny of the majority," McIntyre, 514 U.S. at 357. The Court has also recognized that the Internet is a valuable forum for the exchange of ideas. See, e.g., Reno v. ACLU, 521 U.S. 844, 870 (1997) ("Through the use of chat rooms, any person with a phone line can become a town crier with a voice that resonates farther than it could from any soapbox."). To the extent that anonymity is protected by the

First Amendment, a court should quash or modify a subpoena designed to breach anonymity. See Fed. R. Civ. P. 45(c)(3)(A) (the "issuing court must quash or modify a subpoena" when it "requires disclosure of privileged or other protected matter, if no exception or waiver applies").

The First Amendment does not, however, provide a license for copyright infringement. See, e.g., Harper & Row, Publishers, 471 U.S. at 555-57, 569; Cable/Home, 902 F.2d at 849 ("[w]ith respect to copyright protection, '[t]he first amendment is not a license to trammel on legally recognized rights in intellectual property'" (quoting Dallas Cowboys Cheerleaders, Inc. v. Scoreboard Posters, Inc., 600 F.2d 1184, 1188 (5th Cir. 1979))); Sony Music, 326 F.Supp.2d at 563 ("Parties may not use the First Amendment to encroach upon the intellectual property rights of others."). Thus, to the extent that anonymity is used to mask copyright infringement or to facilitate such infringement by other persons, it is unprotected by the First Amendment.

As indicated in Part I.A. above, the legal standard applied by the district court in the present case in denying the moving Doe defendants' motion to quash plaintiffs' subpoena to SUNYA was the standard adopted by the court in Sony Music, 326 F.Supp.2d 556. In Sony Music, after discussing the above principles, as well as several cases that had dealt with the tension between First Amendment rights and copyright rights, then-District Judge Chin concluded that in the analysis of whether

- 16 -

the qualified privilege requires that the subpoena be quashed, the principal factors include

> (1) [the] concrete[ness of the plaintiff's] showing of a prima facie claim of actionable harm, . . . (2) [the] specificity of the discovery request, . . . (3) the absence of alternative means to obtain the subpoenaed information, . . . (4) [the] need for the subpoenaed information to advance the claim, . . . and (5) the [objecting] party's expectation of privacy.

Sony Music, 326 F.Supp.2d at 564-65. We agree that this constitutes an appropriate general standard for determining whether a motion to quash, to preserve the objecting party's anonymity, should be granted.

On this appeal, Doe 3 does not contend that the Sony Music standard used by the district court here was an erroneous legal standard. Although he asserts that "downloading, distributing, or making music available constitutes protected First Amendment speech" (Doe 3 brief on appeal at 20), he expressly acknowledges that "[t]he First Amendment right to communicate anonymously is, of course, not a license to . . . infringe copyrights. . . . Nor is it an absolute bar against disclosure of one's identity in a proper case" (id.).

Nor does Doe 3 articulate any challenge to the court's evaluation of most of the five factors of the Sony Music standard, i.e., the specificity of the information request, the plaintiffs' need for and the limited availability of the information requested, and the anonymous person's expectation of privacy. Rather, Doe 3 contends that the court should have found that plaintiffs did not make a "particularized showing" (Doe 3 brief

- 17 -

on appeal at 20) sufficient to overcome his qualified privilege. In support of his position, Doe 3 contends that the Supreme Court's recent decisions in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) ("<u>Twombly</u>"), and <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009) ("<u>Iqbal</u>"), imposed "heightened pleading standards" (<u>e.g.</u>, Doe 3 brief on appeal at 18, 28-29) such that plaintiffs were required

> to present specific evidence, including a declaration on personal knowledge from the person who examined the files available for download from each defendant's computer, listened to the files, verified that they were copyrighted songs, determined that the copyrights were registered (and to which plaintiffs), and determined what songs a particular defendant downloaded

(<u>id</u>. at 28). Neither Doe 3's reliance on <u>Twombly</u>/<u>Iqbal</u> nor his contention that plaintiffs' allegations are insufficiently specific has merit.

First, the notion that <u>Twombly</u> imposed a heightened standard that requires a complaint to include specific evidence, factual allegations in addition to those required by Rule 8, and declarations from the persons who collected the evidence is belied by the <u>Twombly</u> opinion itself. The Court noted that Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," <u>Twombly</u>, 550 U.S. at 555 (other internal quotation marks omitted); <u>see also Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 508, 512 (2002) (holding that, at the pleading stage, an employment

discrimination plaintiff who alleges facts that provide fair notice of his claim need not also allege "specific facts establishing a prima facie case," for such a "heightened pleading standard . . . conflicts with Federal Rule of Civil Procedure 8(a)(2)"). The Twombly Court stated that "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," but mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action will not do"; rather, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555 (emphasis added), i.e., enough to make the claim "plausible," id. at 570. Applying these standards to the complaint before it, which claimed violations of § 1 of the Sherman Act, 15 U.S.C. § 1 (prohibiting contracts, combinations, and conspiracies in restraint of trade), the Twombly Court concluded that "stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made." 550 U.S. at 556 (emphasis added). Because the Twombly complaint's factual allegations described only actions that were parallel, and were doctrinally consistent with lawful conduct, the conclusory allegation on information and belief that the observed conduct was the product of an unlawful agreement was insufficient to make the claim plausible. See id. at 556-57, 564-66. The Twombly plausibility standard, which applies to all civil actions, see Iqbal, 129 S. Ct. at 1953, does not prevent a plaintiff from "pleading facts alleged 'upon information and belief'" where the

- 19 -

facts are peculiarly within the possession and control of the defendant, see, e.g., Boykin v. KeyCorp, 521 F.3d 202, 215 (2d Cir. 2008), or where the belief is based on factual information that makes the inference of culpability plausible, see Iqbal, 129 S. Ct. at 1949 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). The Twombly Court stated that "[a]sking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal[ity]." 550 U.S. at 556.

Concluding that the complaint before it failed to state a plausible claim, the Twombly Court stated that "[i]n reaching this conclusion, we do not apply any 'heightened' pleading standard," id. at 569 n.14 (emphasis added). Rather, it emphasized that its holding was consistent with its ruling in Swierkiewicz that "a heightened pleading requirement," requiring the pleading of "'specific facts' beyond those necessary to state [a] claim and the grounds showing entitlement to relief," was "impermissibl[e]," Twombly, 550 U.S. at 570. "Here," the Twombly Court stated, "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Id. (emphasis added).

Nor did Iqbal heighten the pleading requirements. Rather, it reiterated much of the discussion in Twombly and rejected as

insufficient a pleading that the Iqbal Court regarded as entirely conclusory. Accordingly, although Twombly and Iqbal require "'factual amplification [where] needed to render a claim plausible,'" Turkmen v. Ashcroft, 589 F.3d 542, 546 (2d Cir. 2009) (quoting Ross v. Bank of America, N.A (USA), 524 F.3d 217, 225 (2d Cir. 2008)), we reject Doe 3's contention that Twombly and Iqbal require the pleading of specific evidence or extra facts beyond what is needed to make the claim plausible.

Even less meritorious is Doe 3's contention that plaintiffs' showing in the present case was vague and conclusory. Doe 3 states that

> [t]he central allegations in the complaint in this case are that:

> Plaintiffs are informed and believe that each Defendant, without the permission or consent of Plaintiffs, has used, and continues to use, an online media distribution system to download and/or distribute certain of the Copyrighted Recordings[.] . . . Through his or her continuous and ongoing acts of downloading and/or distributing to the public the Copyrighted Recordings, each Defendant has violated Plaintiffs' exclusive rights of reproduction and distribution. . . . Plaintiffs are informed and believe that each Defendant has, without the permission or consent of Plaintiffs, continuously downloaded and/or distributed to the public additional sound recordings owned by or exclusively licensed to Plaintiffs or Plaintiffs' affiliate record labels, and Plaintiffs believe that such acts of infringement are ongoing.

(Doe 3 brief on appeal at 31 (quoting portions of the Complaint ¶ 22) (alterations in Doe 3 brief).) Doe 3 criticizes "[t]hese [as] vague allegations, devoid of both direct knowledge and specific facts." (Doe 3 brief on appeal at 32.)

- 21 -

To characterize this criticism by Doe 3 as unfair would be extremely charitable, for the above ellipses in the Doe 3 brief's quotation from ¶ 22 of the Complaint represent deletions of that paragraph's references to Complaint Exhibit A--in which plaintiffs provide ample detail. For example, the first ellipsis omits the allegation that "Exhibit A identifies on a Defendant-by-Defendant basis (one Defendant per page) the IP address with the date and time of capture and a list of copyrighted recordings that each Defendant has, without the permission or consent of Plaintiffs, downloaded and/or distributed to the public" (Complaint ¶ 22 (emphasis added)). The second ellipsis similarly omits the Complaint's reference to "the sound recordings listed for each Defendant on Exhibit A" (Complaint ¶ 22).

To the extent that ¶ 22's allegations are made on information and belief, virtually all of them are supported by factual assertions in Exhibit A. For example, the allegation that each Doe defendant "has used" file-sharing networks to download and distribute plaintiffs' music is supported by Exhibit A's lists of specific songs found in the respective Doe defendants' file-sharing folders, on the date shown, at the time indicated, on the specified online, peer-to-peer, file-sharing network. The allegation that there was "continue[d]" use is supported by, inter alia, the utter improbability that the songs observed by plaintiffs' investigators in a given Doe defendant's file-sharing folder at a particular time were there only at the precise instant at which they were observed, and not before and not afterwards;

the inference of continued use is also supported by the facts that Exhibit A lists each of the "Doe" defendants as engaging in such file-sharing on a different date and that defendants' attorney has represented that some of the "Doe" defendants are in fact the same person (see, e.g., Doe 3 brief on appeal at 16 n.13; Amended Supporting Declaration of Richard A. Altman dated October 6, 2008, at 1 n.1). The principal assertion made only on information-and-belief is that defendants' copying and/or distribution of plaintiffs' music were without permission. But no more definitive assertion as to lack of permission seems possible when the users remain anonymous.

The Complaint's Exhibit A itself is never mentioned in Doe 3's brief. Page 3 of that Exhibit makes assertions as to Doe 3 and could hardly be more specific. It specifies that at "**IP Address**[] 169.226.226.24" at 2:15:57 a.m. on April 12, 2007, the "**P2P Network**[] AresWarez" was in use (emphases in original); that a total of 236 audio files were present in a file-sharing folder at that IP address at that time; and that among those files were the following songs, whose respective copyrights were owned by the plaintiffs indicated:

- 23 -

| Copyright Owner | Artist | Recording Title | Album Title |
|---|---|---|---|
| UMG Recordings, Inc. | Beastie Boys | Girls | Licensed To Ill |
| UMG Recordings, Inc. | Jodeci | Come and Talk to Me | Forever My Lady |
| Motown Record Company L.P. | Lionel Richie | Hello | Can't Slow Down |
| Interscope Records | Eminem | Superman | Eminem Show |
| Capitol Records, LLC | Poison | Every rose has its thorn | Open Up & Say....Ahh! |
| SONY BMG MUSIC ENTERTAINMENT | Good Charlotte | Lifestyles of of the Rich and Famous | The Young and the Hopeless |

(Complaint Exhibit A, at 3.)  The Complaint alleges that notice of copyright pursuant to 17 U.S.C. § 401 had been placed on each such album cover and on the published copies of each of the sound recordings identified in Exhibit A.  (Complaint ¶ 23.)  Given the factual detail in the Complaint and its Exhibit, plaintiffs' pleading plainly states copyright infringement claims that are plausible.  See generally Grokster, 545 U.S. at 920 (individual "users of peer-to-peer networks . . . have prominently employed those networks in sharing copyrighted music and video files without authorization"); In re: Aimster Copyright Litigation, 334 F.3d at 645 ("Teenagers and young adults who have access to the Internet like to swap computer files containing popular music.  If the music is copyrighted, such swapping, which involves making and transmitting a digital copy of the music, infringes copyright. The swappers, who are ignorant or more commonly disdainful of

copyright and in any event discount the likelihood of being sued or prosecuted for copyright infringement, are the direct infringers.").

In addition, the Linares declaration submitted in support of plaintiffs' subpoena request pointed out that Exhibit A lists only samples of the numerous "audio files that were being shared by [the Doe d]efendants at the time that the RIAA's agent . . . observed the infringing activity" (Linares Decl. ¶ 19; see Complaint Exhibit A, stating that as many as 1,143 audio files were found in some of the Doe defendants' file-sharing folders), and that complete lists would be provided to the court upon request (Linares Decl. ¶ 19). No greater specificity in the Complaint or in plaintiffs' submissions in support of their request for the subpoena to SUNYA was required.

Doe 3 argues that the Complaint does not adequately allege copyright infringement because, he argues, merely "making . . . available" a work on a peer-to-peer network does not violate a copyright holder's distribution right absent proof of actual distribution (Doe 3 brief on appeal at 5). We need not address the question of whether copyright infringement occurs when a work is simply made available, however, because the Complaint alleges not that defendants merely made songs available on the network but that defendants both actually downloaded plaintiffs' copyrighted works and distributed them. (Complaint ¶ 22 ("Exhibit A includes the currently-known total number of audio files being distributed by each Defendant.").) The Complaint thus alleges violations of

the copyright holders' reproduction and distribution rights under 17 U.S.C. §§ 106(1) and (3). See, e.g., London-Sire Records, Inc. v. Doe 1, 542 F.Supp.2d 153, 166 & n.16, 169 (D. Mass. 2008) (violations of copyright owner's reproduction and distribution rights were adequately alleged by complaint stating that the defendants used a peer-to-peer network to download copyrighted works without permission and to distribute them to the public). For the reasons stated above, the facts asserted in the Complaint are adequate to support these allegations. See id. at 169 ("The Court can draw from the [c]omplaint and the current record a reasonable inference in the plaintiffs' favor--that where the defendant has completed all the necessary steps for a public distribution, a reasonable fact-finder may infer that the distribution actually took place." (emphasis omitted)).

We need not decide whether the requirement we endorse today, that a plaintiff seeking to subpoena an anonymous Internet defendant's identifying information must make a "concrete showing of a prima facie claim of actionable harm," would be satisfied by a well-pleaded complaint unaccompanied by any evidentiary showing. Here, plaintiffs' Complaint, attached exhibit, and supporting declaration are clearly sufficient to meet that standard.

We note that Doe 3 disparages the contents of the Linares declaration, arguing that it is "fatally short on averments on personal knowledge about the supposed infringements by Doe 3" (Doe 3 brief on appeal at 28 (emphasis in original)). On the face of the record--even assuming that such a summary-judgment-level or

trial-level standard were applicable--that criticism is unjustified. Linares stated in his declaration, "under penalty of perjury," that he "ha[d] personal knowledge of the facts stated [therein]" (Linares Decl. introductory paragraph), that he had provided "oversight over the review of the lists contained in Exhibit A to the Complaint," and that he "attest[ed] to the veracity of those lists" (id. ¶ 15). He stated: "this Declaration is based on my personal knowledge, and if called upon to do so, I would be prepared to testify as to its truth and accuracy." (Id. ¶ 2.) Further, even if Linares did not himself view the contents of defendants' file-sharing folders, his testimony may well be sufficient to have the results of the investigation he commissioned admitted in evidence at trial. See, e.g., Keith v. Volpe, 858 F.2d 467, 481 (9th Cir. 1988) (testimony by a witness who "functioned as the survey director, even though he contracted with another firm to provide interviewers" for the survey, "is sufficient to establish a foundation" for admissibility of the survey at trial), cert. denied, 493 U.S. 813 (1989); Piper Aircraft Corp. v. Wag-Aero, Inc., 741 F.2d 925, 931 (7th Cir. 1984) ("We agree with the suggestion in McCarthy's treatise that the testimony of a survey director alone can establish the foundation for the admission of survey results." (citing 2 J.T. McCarthy, Trademarks and Unfair Competition § 32:53 (1973))). No greater proof was required in opposition to the motion to quash the subpoena seeking the identities of the persons who downloaded and/or distributed plaintiffs' copyrighted works.

Finally, we note that Doe 3 several times mentions the copyright doctrine of "fair use," stating, for example, that "the right to make a personal copy of copyrighted material may be protected as fair use" (Doe 3 brief on appeal at 5), and that "some downloading may be permissible as fair use" (id. at 25). Whether or not these and other statements are intended to suggest that Doe 3 has a fair-use defense to plaintiffs' claims of copyright infringement, we reject the proposition that these arguments are sufficient to warrant quashing plaintiffs' subpoena. "Fair use" is an equitable doctrine, the applicability of which presents mixed questions of law and fact. See, e.g., Harper & Row, Publishers, 471 U.S. at 560. "Fair use presupposes good faith and fair dealing," and one pertinent consideration is "whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." Id. at 562 (internal quotation marks omitted).

> [E]specially relevant in determining whether [a given] use was fair are: (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the substantiality of the portion used in relation to the copyrighted work as a whole; [and] (4) the effect on the potential market for or value of the copyrighted work.

Id. at 560-61. Here, the second, third, and fourth elements are clear. The works at issue are original musical compositions, present in the respective Doe defendants' file-sharing folders in their entirety; and, assuming lack of the copyright owners' consent, the likely detrimental effect of file-sharing on the value of copyrighted compositions is well documented, see, e.g.,

- 28 -

Grokster, 545 U.S. at 923 (anecdotal and statistical evidence "gives reason to think that the vast majority of users' downloads are acts of infringement, and because well over 100 million copies of the software in question are known to have been downloaded, and billions of files are shared across the FastTrack and Gnutella networks each month, the probable scope of copyright infringement is staggering"). And although Doe 3 indicates that he "may" have had a permissible purpose for copying and sharing the music found in his file-sharing folder, any assertion of such a purpose raises questions of credibility and plausibility that cannot be resolved while Doe 3 avoids suit by hiding behind a shield of anonymity.

We note that we are skeptical of the magistrate judge's view that "any pretext of privacy" on the part of a computer owner is "render[ed] void" simply by "the notion [that he] allow[s] others to have access to [his] database by virtue of the Internet in order to pluck from a computer information and data that the computer owner or user wishes to share," Arista I, 2009 WL 414060, at *6. The privacy claimed here is not for the information that the computer owner or user wishes to share but rather for his or her identity. Instead, we regard Doe 3's expectation of privacy for sharing copyrighted music through an online file-sharing network as simply insufficient to permit him to avoid having to defend against a claim of copyright infringement.

CONCLUSION

We have considered all of Doe 3's contentions on this appeal and have found them to be without merit. The order of the district court denying the motion to quash the subpoena is affirmed.

The stay of SUNYA's compliance with so much of the subpoena as sought information pertaining to Doe 3, previously granted by this Court pending resolution of the appeal, is hereby lifted.