**JOHN WILEY & SONS, INC., Plaintiff,**

v.

**John DOE NOS. 1–30, Defendants.**

**No. 12 Civ. 3782(LTS)(JLC).**

United States District Court,
S.D. New York.

Sept. 19, 2012.

William Irvin Dunnegan, Benjamin Daniel Liebowitz, Dunnegan & Scileppi LLC, New York, NY, for Plaintiff.

*MEMORANDUM AND ORDER*

JAMES L. COTT, United States Magistrate Judge.

In this ease, Plaintiff John Wiley & Sons, Inc. ("Wiley" or "Plaintiff") alleges that 30 unidentified "John Doe" defendants used peer-to-peer file-sharing software to illegally copy and distribute Wiley's copyrighted

works and infringe Wiley's trademarks. John Doe No. 9 ("Doe No. 9") has moved for a protective order and to quash a subpoena that Wiley has served on nonparty Cablevision Systems ("Cablevision") for the production of Doe No. 9's identifying information. For the reasons discussed below, the motion is DENIED.

## I. BACKGROUND

Wiley is a global publisher of books and journals and assignee of the copyright to the seven written works at issue in this case. (Complaint, dated May 11, 2012 ("Complaint" or "Compl.") ¶¶ 7–11 (Dkt. No. 1)).[1] Wiley alleges that defendants used a file-sharing software known as BitTorrent to access, copy, and distribute Wiley's copyrighted works, without Wiley's consent, through a network of Internet service providers ("ISPs").[2] (*See generally id.*). Appended to Wiley's Complaint is a schedule identifying the IP address associated with each alleged unlawful download of Wiley's copyrighted work, and setting forth, for each, the ISP servicing that address, the name and copyright registration number of the work downloaded, and the date, time, and location at which the download occurred. (*See id.* at Schedule A). The Complaint assumes that the individual who unlawfully copied and distributed each work is also the Internet subscriber of record associated with the IP address listed. For example, Wiley alleges that Doe No. 9, a Cablevision (*i.e.,* Optimum Online) subscriber identified by the IP address 24.187.119.248, illegally copied and distributed the work *Windows 7 Secrets* on May 10, 2012, at 1:50 p.m. in Coram, New York, using her Cablevision Internet service. (*Id.* at Sch. A at 12).[3]

---

1. These works are: (1) *The Fat Burning Bible,* (2) *Windows 7 Secrets,* (3) *The Six–Figure Second Income,* (4) *How to Build a Super Vocabulary,* (5) *Presentation Secrets 2011,* and (6) *101 Small Business Ideas for Under $5000.* (Compl. at Sch. A).

2. BitTorrent software enables a computer to exchange electronic files, such as electronic copies of the works published by Wiley, with other computers (or "peers") through the Internet. (Compl. ¶¶ 14–15). Computers running the software send or receive pieces of a particular file until a copy of the entire work has been ex-

changed with one or more computers. (*Id.* ¶ 14). After BitTorrent completes a download of the entire work, the computer on which it is running continuously distributes copies of the file to other computers until the user manually disconnects from the software. (*Id.*).

3. Although the Complaint refers to the defendants as "John Does," Wiley's opposition papers suggest that Doe No. 9 is a woman. (*See* Plaintiff's Opposition to Defendant John Doe No. 9's Motion to Quash a Subpoena to an Internet Service Provider ("Pl.'s Opp.") at 2 (referring to

On May 24, 2012, Wiley filed an *ex parte* application for an order authorizing the issuance of subpoenas on ISPs to obtain subscriber information for the IP addresses identified in Schedule A. (Dkt. No. 2). In support of its application, Wiley filed a declaration of its attorney, William Dunnegan, Esq., explaining that a paralegal at Dunnegan's firm had "downloaded the copyrighted works listed on Schedule A . . . from John Doe Nos. 1–30 using BitTorrent software [and, after doing so,] used a tool available on the Internet to look up the [ISP] for each IP address." (Declaration of William Dunnegan in Support of Plaintiff's *Ex Parte* Application for an Order Authorizing the Issuance of Subpoenas on Certain Internet Service Providers to Determine the Identity of Defendants, dated May 24, 2012 ("Dunnegan Decl.") ¶ 6 (Dkt. No. 3)). Dunnegan further explained that the way the BitTorrent software is used is largely anonymous, except for tracking a user's IP address, and therefore Wiley would be unable to "determine the true identity and contact information for each of the defendants without obtaining information from the ISPs by subpoena." (*Id.* ¶ 5–6) On May 30, 2012, Judge Swain granted Wiley's application and authorized issuance of five ISP subpoenas, including a subpoena to Cablevision for the identifying information of John Doe Nos. 9–12. (Dkt. No. 6).

On July 27, 2012, Doe No. 9, proceeding *pro se* and anonymously, moved to quash the subpoena and for a protective order on the basis that "the subpoena seeks documents and information which are confidential and palpably irrelevant to the pending proceedings." (Motion to Quash and for a Protective Order, dated July 27, 2012 ("Motion" or "Motion to Quash") ¶ 2 (Dkt. No. 7)). Doe No. 9 states that "I have never utilized BitTorrent to download the plaintiff's trade book 'Window[s] 7 Secrets.' " (*Id.*). She asserts that because her IP address "was not locked and could have been accessed by an unknown party at an unknown location via 'piggybacking,' " Wiley is unable to show that she is the person who downloaded Wiley's book. (*Id.*

Doe No. 9's motion as "her" motion) (Dkt. No. 9)).

¶ 4). Doe No. 9 also argues that "there is improper joinder, improper venue, and a lack of personal jurisdiction," (*id.* ¶ 2), and that she "was never personally served or contacted regarding the nature of this case until July 16, 2012[,] when Cablevision sent a letter to my address by United States Postal Service that included this court's order and subpoena requiring [Cablevision] to turn over documents . . . related to the services provided to me by their company." (*Id.* ¶ 5).

On August 8, 2012, Wiley filed an opposition to Doe No. 9's Motion to Quash, arguing that the Motion "should be denied as moot because Cablevision responded to the subpoena and disclosed to Wiley the identity of John Doe No. 9." (Pl.'s Opp. at 1). Wiley contended that Cablevision produced Doe No. 9's name and address by facsimile on August 6, 2012 after "Doe No. 9 apparently failed to deliver a copy of his or her motion to quash to Cablevision before the deadline that Cablevision had set expired." (*Id.*). On August 13, 2012, Doe No. 9 filed a letter with the Court explaining that she had served a copy of her Motion on Cablevision on August 10, but was told at that time that Cablevision had already released her information to Wiley. (Letter from John Doe #9 to Hon. Judge Laura Ta[y]lor Swain, dated Aug. 13, 2012 (Dkt. No. 11)). Doe No. 9 also argued that the "mere fact that the Plaintiff has the [identifying] information does not make the Motion moot." (*Id.*).

■ I agree that Doe No. 9's motion is not moot merely because Cablevision has already responded to the subpoena, because Wiley "can be ordered to return the information and prohibited from using it." *Sony Music Entm't Inc. v. Does 1–40*, 326 F.Supp.2d 556, 561 (S.D.N.Y.2004) (rejecting mootness argument under similar circumstances); *see also* Fed.R.Civ.P. 45(d)(2)(B) ("If information produced in response to a subpoena is subject to a claim of privilege . . . [a party] must not use or disclose the information until the claim is resolved."). Therefore, I consider Doe No. 9's motion on its merits.[4]

4. Judge Swain referred this case to me for general pre-trial supervision while the Motion was pending (Dkt. No. 12), and, as it is non-dispositive, it is appropriate for me to decide. *See* 28

## II. DISCUSSION

"The burden of persuasion in a motion to quash a subpoena and for a protective order is borne by the movant." *Pegoraro v. Marrero*, No. 10 Civ. 00051(AJN)(KNF), 2012 WL 1948887, at *4 (S.D.N.Y. May 29, 2012) (quoting *Jones v. Hirschfeld*, 219 F.R.D. 71, 74–75 (S.D.N.Y.2003) (quotation marks omitted)). "A determination to grant or deny a motion for a protective order or a motion to quash a subpoena is discretionary." *Id.* (citing *Galella v. Onassis*, 487 F.2d 986, 997 (2d Cir.1973); *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 68 (2d Cir. 2003)).

### A. Motion to Quash

Under Rule 45 of the Federal Rules of Civil Procedure, a court must quash or modify a subpoena if the subpoena "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed.R.Civ.P. 45(c)(3)(A)(iii). Courts in this Circuit have recognized that Internet users have a limited First Amendment privacy interest in anonymous Internet usage, including "the use of [peer-to-peer] file copying networks to download, distribute or make available for distribution copyrighted" material in electronic form. *Sony Music*, 326 F.Supp.2d at 564. "To the extent that anonymity is protected by the First Amendment, a court should quash or modify a subpoena designed to breach anonymity." *Arista Records*, 604 F.3d at 118 (citing Fed.R.Civ.P. 45(c)(3)(A)).

However, in the file-sharing context, First Amendment protection "is limited, and is subject to other considerations." *Sony Music*, 326 F.Supp.2d at 564. In particular, "[p]arties may not use the First Amendment to encroach upon the intellectual property rights of others." *Id.* at 563 (citing *In re Capital Cities/ABC, Inc.*, 918 F.2d 140, 143 (11th Cir.1990)). Therefore, in analyzing whether the First Amendment requires the court to quash a subpoena for an Internet subscriber's identifying information, courts in

this Circuit have applied the five-factor test set forth in *Sony Music*, evaluating: (1) the concreteness of the plaintiff's showing of a prima facie claim of actionable harm; (2) the specificity of the discovery request; (3) the absence of alternative means to obtain the subpoenaed information; (4) the need for the subpoenaed information to advance the claim; and (5) the objecting party's expectation of privacy. *Arista Records*, 604 F.3d at 119 (endorsing these factors as "an appropriate general standard for determining whether a motion to quash, to preserve the objecting party's anonymity, should be granted") (citing *Sony Music*, 326 F.Supp.2d at 564–65). Accordingly, I apply this test to Doe No. 9's Motion to Quash.

### 1. Prima Facie Claim of Copyright Infringement

Wiley has made a concrete showing of a prima facie claim of copyright infringement by alleging (1) its ownership of the registered copyright for *Windows 7 Secrets*, and (2) specific details regarding unlawful copying and distribution of this work, including the date and time at which the copying occurred, the file-sharing technology used, and the IP address of the computer from which the file was copied. *See, e.g., Sony Music*, 326 F.Supp.2d at 565 (prima facie claim of copyright infringement consists of two elements (1): ownership of a valid copyright, and (2) copying of constituent elements of the work that are original) (citing *Arden v. Columbia Pictures Indus., Inc.*, 908 F.Supp. 1248, 1257 (S.D.N.Y.1995)); *In re BitTorrent Adult Film Copyright Infringement Cases*, Nos. 11–3995(DRH)(GRB), 12–1147(JS)(GRB), 12–1150(LDW)(GRB), 12–1154(ADS)(GRB), 2012 WL 1570765, at *6 (E.D.N.Y. May 1, 2012) ("alleging ownership of registered, copyrighted works that have been infringed" sets forth prima facie claim under first *Sony Music* factor). This factor weighs against granting the Motion.

U.S.C. § 636(b)(1)(A); *Arista Records LLC v. Doe 3*, 604 F.3d 110, 116 (2d Cir.2010) (motion to quash subpoena served on ISP for disclosure of identities of Internet users allegedly engaged in illegal downloading was not dispositive and therefore properly referred to magistrate judge for decision).

### 2. Specificity of the Discovery Request

■ Wiley's request is specific, as it seeks concrete and narrow information: the name and address of the subscriber associated with Doe No. 9's IP address, which Wiley alleges was used to infringe its copyright to *Windows 7 Secrets*. In *Sony Music*, the court found a virtually identical request to satisfy this factor because it was "sufficiently specific to establish a reasonable likelihood that the discovery request would lead to identifying information that would make possible service upon particular defendants who could be sued in federal court." *Sony Music*, 326 F.Supp.2d at 566 (citations omitted). More recently, district courts have expressed concern that, "due to the increasing popularity of wireless routers," an "IP address provides only the location at which one of any number of computer devices may be deployed," and it is therefore less likely than in the past that a "subscriber to an IP address carried out a particular computer function" associated with that IP address. *In re BitTorrent*, 2012 WL 1570765, at *3; *see also Digital Sin, Inc. v. Does 1–176*, 279 F.R.D. 239, 242 (S.D.N.Y. 2012); *SBO Pictures, Inc. v. Does 1–3036*, No. 11–4220 SC, 2011 WL 6002620, at *3 (N.D.Cal. Nov. 30, 2011). However, this development does not affect the *specificity* of the request so much as the likelihood that any particular subscriber is, in fact, the person responsible for the alleged infringing activity. I discuss this issue further in considering factor 5, but I note here that the possibility that Doe No. 9 did not carry out the allegedly infringing activity attributed to her in the Complaint does not—in this case—implicate Doe No. 9's privacy or other First Amendment interests so much as a general interest in avoiding suit for conduct potentially attributable to someone else. Doe No. 9's general interest in avoiding suit has little bearing on whether Wiley has stated a specific request for relevant and otherwise dis-

coverable information, which it has done. *Cf. Arista Records*, 604 F.3d at 120–22 (finding allegations regarding unlawful downloads to IP addresses of anonymous Internet subscribers sufficient to support denial of motion to quash and noting that there is no "probability requirement" of success on the merits to obtain discovery). Therefore, this factor weighs against granting the Motion.[5]

### 3. Absence of Alternative Means to Obtain Subpoenaed Information

■ In support of its application for issuance of the subpoenas, Wiley has explained that use of the BitTorrent software is "largely anonymous" except insofar as it requires a user to broadcast the user's IP address. (Dunnegan Decl. ¶ 5). Wiley further attests that it "cannot determine the identity and contact information for each of the defendants without obtaining [such] information from the ISPs by subpoena." (*Id.* ¶ 6). Doe No. 9 has not refuted this assertion, as is her burden, or otherwise established that Wiley could obtain her identity by other means. Therefore, Wiley has established that it lacks the means to obtain the subscriber's identifying information, other than by subpoena. *See, e.g., Sony Music*, 326 F.Supp.2d at 566 (finding absence of other means to obtain subpoenaed information under similar circumstances).

### 4. Wiley's Need for the Subpoenaed Information

"Ascertaining the identities and residences of the Doe defendants is critical to [Wiley's] ability to pursue litigation, for without this information, [Wiley] will be unable to serve process." *Id.* Again, Doe No. 9 does not explain how, in the absence of a subpoena such as the one here, Wiley can identify potential infringers of its intellectual property rights or otherwise protect its interests in

---

5. I reject Doe No. 9's assertion that her identity is not discoverable because it is "palpably irrelevant to the pending proceedings." (Motion to Quash ¶ 2). Even if Doe No. 9 is not the person who downloaded *Windows 7 Secrets*, as she argues, evidence is relevant if "it has any tendency to make a fact more *or less* probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed.

R.Evid. 401(a)–(b) (emphasis added). Rule 26 permits discovery of the "identity and location of persons who know of any [relevant] matter." Fed.R.Civ.P. 26(b)(1). Doe No. 9 clearly knows whether she is the individual who conducted the download at issue and that fact is plainly relevant. As Doe No. 9 is a person who knows of a relevant matter, her identity is discoverable under Rule 26(b)(1).

preventing the unlawful copying of its copyrighted works. Therefore, Wiley has demonstrated that the subpoenaed information is "central" to advancing its claims. *Id.* (citations omitted).

### 5. *Doe No. 9's Expectation of Privacy*

■■■■ ISP subscribers have a minimal expectation of privacy in the transmission or distribution of copyrighted material. *See, e.g., Arista Records,* 604 F.3d at 118 ("[T]o the extent that anonymity is used to mask copyright infringement or to facilitate such infringement by other persons, it is unprotected by the First Amendment."). In addition, as the *Sony Music* court observed, Cablevision subscribers agree to terms of service that prohibit the unlawful transmission of information and authorize Cablevision "to disclose any information necessary to satisfy any law, regulation or other governmental request," thereby decreasing any expectation of anonymity. *Sony Music,* 326 F.Supp.2d at 566–67.[6]

Citing *K–Beech, Inc. v. John Does 1–37,* 11–CV–3995 (DRH)(GRB) (E.D.N.Y. May 1, 2012), Doe No. 9 argues that permitting Wiley's use of expedited discovery to obtain her identity has the potential to "wrest quick settlements" from innocent persons, because "the embarrassment of public exposure might be too great, the legal system too daunting and expensive" to wait for Wiley to put forth competent evidence that Doe No. 9 is the person who conducted the illegal download. (Motion to Quash ¶ 12).[7] However, in contrast to this case, where the Doe defendants are alleged to have downloaded Wiley's trade books relating to a variety of mainstream topics, the *K–Beech* court (as well as several of the cases it cited) was confronted with the use of unsecured IP addresses to download pornographic materials. *See In re*

*BitTorrent,* 2012 WL 1570765, at *1, 4–5. Moreover, the *K–Beech* plaintiff had engaged in an aggressive settlement campaign and insisted upon pursuing the case against one of the Doe defendants without regard to substantial evidence proffered by that defendant to demonstrate that he was not, in fact, the individual who conducted the alleged download. *Id.* at *5. It was in this context that the Court expressed concern about the plaintiff's potential misuse of subscribers' identifying information to coerce quick settlements. *Id.* I find that concern much less compelling in this case, where defendants are not alleged to have copied sexually explicit information, as to which the embarrassment of public exposure would be heightened. *Id.* at *4.

Further, there is nothing in the record to suggest that Wiley has engaged in any of the improper practices that took place in *K–Beech* or that Wiley seeks to use "the Court and its subpoena powers to obtain sufficient information to shake down the John Does," as the plaintiffs' counsel was found to have done in *K–Beech. Id.* at *5. Doe No. 9 may have a valid defense that she was not the individual responsible for the *Windows 7 Secrets* download alleged in the Complaint. If so, that defense will be litigated at the appropriate time. Given the foregoing analysis of the *Sony Music* factors, however, the prospect of such a defense does not raise a First Amendment privacy interest that would justify concealing Doe No. 9's identity so as to protect her from suit altogether. *Arista Records,* 604 F.3d at 124 (Doe defendant's "expectation of privacy for sharing copyrighted [materials] through an online file-sharing network [is] insufficient to permit him to avoid having to defend against a claim of copyright infringement.").[8] Accordingly, Doe No. 9's Motion to Quash is denied.

---

**6.** Cablevision's current terms of use are identical in this respect. *See* Optimum Online Terms of Service ¶ 11(A), http://www.optimum.net/Terms (effective Oct. 2011, last visited Sept. 17, 2012) ("Subscriber acknowledges and agrees that Cablevision has the right to monitor content and your use of the Optimum Online Service electronically from time to time and to disclose any information as necessary to satisfy any law, regulation or other governmental request. . . .").

**7.** Although Doe No. 9 does not provide the full citation to the *K–Beech* opinion to which she refers, it appears that she is citing to the *In re BitTorrent* decision, which addressed four related cases, of which *K–Beech* was one. *See In re BitTorrent,* 2012 WL 1570765, at *1.

**8.** Moreover, Doe No. 9 has acknowledged that she did not secure her IP address and that "[t]here was nothing preventing a stranger or a neighbor or a person passing by on the bus from using [her] insecure IP address." (Motion to

### B. Motion for Protective Order

Rule 26 permits a court, for good cause, to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed.R.Civ.P. 26(c)(1). For reasons identical to those discussed above, I do not find good cause to issue a protective order.[9] Accordingly, Doe No. 9's motion for a protective order is denied.

### C. Joinder, Venue, and Personal Jurisdiction

Finally, Doe No. 9 has raised issues of improper joinder, venue, and lack of personal jurisdiction. Although Doe No. 9 raises "a fair issue as to whether all these claims against [30] apparently unrelated individuals should be joined in one lawsuit, discussion of joinder is not germane to the motion[ ] to quash before the Court, as the remedy for improper joinder is severance ... and not the quashing of the subpoena at issue here." *Sony Music*, 326 F.Supp.2d at 568. Similarly, as Doe No. 9 has not yet been named or served with an amended complaint in this action, arguments as to venue and personal jurisdiction are premature. "This action is in its infancy and each defendant will have ample time to challenge his inclusion in the litigation." *John Wiley & Sons, Inc. v. Does 1–27*, No. 11 Civ. 7627(WHP), 2012 WL 364048, at *1–2 (S.D.N.Y. Feb. 3, 2012) (rejecting joinder, venue and personal jurisdiction challenges on motion to quash) (citing *Sony Music*, 326 F.Supp.2d at 568); *see also Arista Records LLC v. Does 1–16*, No. 8–CV–765 (GTS)(RFT), 2009 WL 414060, at *8 (N.D.N.Y. Feb. 18, 2009) (denying request to be severed from other defendants as premature), *aff'd* 604 F.3d 110 (2d Cir.2010).

### III. CONCLUSION

For the reasons set forth above, Doe No. 9's motion to quash and for a protective order is DENIED. Doe No. 9 may raise any

appropriate challenge to joinder, venue, or personal jurisdiction once she has been named and served with an amended complaint.

**SO ORDERED.**

---

Quash ¶ 4). Doe No. 9's failure to take basic steps to secure her IP address also demonstrates a lessened expectation of privacy in her Internet activities.

9. Rule 26 requires that any motion for a protective order "include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Fed. R.Civ.P. 26(c). As Doe No. 9 has not done so, she also does not meet the procedural prerequisites to obtain a protective order under Rule 26.