09-4561-cv
In Re: Pineapple Antitrust Litigation

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, at 500 Pearl Street, in the City of New York, on the 3rd day of November, two thousand ten.

Present:   ROBERT A. KATZMANN,
           PETER W. HALL,
                     *Circuit Judges*,
           BARBARA S. JONES,
                     *District Judge*.[*]

_____

AMERICAN BANANA CO., INC., JUST-A-MERE TRADING COMPANY LLC, MEIJER, INC., MEIJER DISTRIBUTION, INC.,

            *Plaintiffs-Appellants*,

            - v -                          No. 09-4561-cv

J. BONAFEDE CO., INC., GARY FREED, ALBERTA LOPEZ, CARRIE PARDY, BRENDA CALDARELLI, NEIL SCHWAM, MARIANNE BARRY, DIRECT PURCHASER PLAINTIFFS, INDIRECT PURCHASER PLAINTIFFS, STATE INDIRECT PURCHASER PLAINTIFFS,

            *Plaintiffs*,

DEL MONTE FRESH PRODUCE COMPANY, DEL MONTE FRESH PRODUCE, N.A., INC., DEL MONTE FRESH PRODUCE,

            *Defendants-Appellees*.

_____

---

[*] Judge Barbara S. Jones of the United States District Court for the Southern District of New York, sitting by designation.

For Plaintiffs-Appellants:                          J. DOUGLAS RICHARDS, Cohen Milstein
                                                    Sellers & Toll PLLC, New York, NY,
                                                    MICHAEL M. BUCHMAN (Adam Kurtz,
                                                    *on the brief*), Pomerantz Haudek
                                                    Grossman & Gross LLP, New York, NY


For Defendants-Appellees:                           STUART H. SINGER (Carlos M. Sires, Carl E.
                                                    Goldfarb, James M. Grippando, *on the brief*),
                                                    Boies, Schiller & Flexner LLP, Ft. Lauderdale,
                                                    FL; David A. Barrett, Boies, Schiller & Flexner
                                                    LLP, New York, NY


Appeal from the United States District Court for the Southern District of New York (Berman, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs-Appellants American Banana Co., Inc., Just-A-Mere Trading Company LLC, Meijer, Inc., and Meijer Distribution, Inc. appeal from the September 30, 2009 judgment of the District Court for the Southern District of New York (Berman, *J.*) granting defendants' motion to exclude expert testimony and for summary judgment. Plaintiffs also challenge the November 9, 2007 Order of the district court denying plaintiffs' objections to the magistrate judge's January 4, 2007 Memorandum and Order denying plaintiffs' motion under Federal Rule of Civil Procedure 37 to compel production of documents on the basis of the "crime-fraud" exception to the attorney-client privilege. We assume the parties' familiarity with the facts and procedural history of the case.

Plaintiffs assert claims of monopolization under section 2 of the Sherman Act, 15 U.S.C. § 2, alleging that defendants improperly monopolized the market for fresh, whole, extra-sweet pineapples by (1) sending intentionally false and misleading letters (so-called "threat letters") to competitors and others giving the impression that the Fresh Del Monte Gold™ pineapple, also

2

known as the MD-2 pineapple, was patented by defendants; and (2) engaging in sham patent litigation against Maui Land & Pineapple, Co. ("Maui") in order to deter competition in the market. Plaintiffs argue principally that the district court erred in granting summary judgment to defendants and in excluding the testimony of plaintiffs' expert economist and patent-law expert. We review the district court's summary judgment decision *de novo*, but we note that "summary judgment is particularly favored [in antitrust cases] because of the concern that protracted litigation will chill pro-competitive market forces." *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 104 (2d Cir. 2002) (citing *Tops Mkts., Inc. v. Quality Mkts., Inc.*, 142 F.3d 90, 95 (2d Cir. 1998)). Therefore, "[a]lthough all reasonable inferences will be drawn in favor of the non-movant, those inferences 'must be reasonable in light of competing inferences of acceptable conduct.'" *Id.* at 105 (quoting *Tops Mkts.*, 142 F.3d at 95). The exclusion of expert testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), is reviewed for abuse of discretion and will be overturned only if it is "manifestly erroneous." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 264–65 (2d Cir. 2002) (quoting *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1042 (2d Cir. 1995)) (internal quotation marks omitted). The district court is accorded "broad discretion in determining what method is appropriate for evaluating reliability under the circumstances of each case." *Id.* at 265.

To succeed on a section 2 monopolization claim, plaintiffs must establish both "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *PepsiCo, Inc.*, 315 F.3d at 105 (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966)). The second element requires "[p]roof of willful intent and unreasonable exclusionary or anticompetitive effects" so

3

that a trier of fact may distinguish "between conduct that defeats a competitor because of efficiency and consumer satisfaction, and conduct that 'not only (1) tends to impair the opportunities of rivals, but also (2) either does not further competition on the merits or does so in an unnecessarily restrictive way.'" *Trans Sport, Inc. v. Starter Sportswear, Inc.*, 964 F.2d 186, 188–89 (2d Cir. 1992) (quoting *U.S. Football League v. Nat'l Football League*, 842 F.2d 1335, 1359 (2d Cir. 1988)) (internal quotation marks omitted). Therefore, assuming *arguendo* that plaintiffs are correct that defendants possessed monopoly power in a market limited to MD-2 pineapples, plaintiffs' claims nonetheless fail because they cannot show that the threat letters or the alleged sham litigation had the requisite anticompetitive effect of delaying competitors' entry into this market.

Defendants asserted their patent infringement counterclaim in the litigation with Maui in June 2001. Even assuming that plaintiffs can successfully argue that this counterclaim was a sham — that is, "objectively baseless" such that "no reasonable litigant could realistically expect success on the merits," *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993) — the record does not indicate how this litigation involving the CO-2 pineapple, which was commenced after Dole Food Company ("Dole") had entered the MD-2 market, could have caused anticompetitive effects in a market that was, according to plaintiffs, entirely distinct from the market containing the CO-2 pineapple.

Assessing the effect of the threat letters is slightly more complex. In 1995, Daniel Funk, a former Del Monte Vice President of Research and Development, sent five letters to various Costa Rican laboratories involved in the propagation of MD-2 pineapple seeds. The letters were the same in essentials: they referenced the theft of Del Monte's MD-2 plant material, stated that Del Monte intended to protect its interests, and then referenced an unrelated patent on the CO-2

4

pineapple. A copy of one of these letters was apparently forwarded by the laboratory that received it to Dole. The letters are capable on their face of creating the impression that the patent covered the MD-2, but that is not the end of the analysis. Although the record reflects that various competitors were confused, at least initially, as to whether the MD-2 was patented, plaintiffs must also show that this confusion was a "material cause" of delayed or deterred entry into the market. *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 220 (2d Cir. 2004).

Plaintiffs attempted to demonstrate the anticompetitive effects of these threat letters in part through the proposed expert testimony of economist Dr. Ronald W. Cotterill. We conclude that the district court did not abuse its discretion in excluding Dr. Cotterill's expert opinion that competitors were delayed in entering the MD-2 market because his opinion recited "selective facts," drew legal conclusions within the province of the jury, and failed to sufficiently explain the alleged "reasoned economic analysis" underlying his conclusions. Special App'x 90–91. But even if we were to consider Dr. Cotterill's testimony, the evidence before us fails to establish as genuine issue of material fact with respect to the necessary causation.

There is ample evidence in the record negating the reasonableness of any inference that the threat letters had anticompetitive effects. For example, David DeLorenzo, Dole's president until 2001, testified that Dole moved "very, very slowly with pineapple development," especially in light of the failure of Dole's Dominican Republic plantation in the early 1990s, and that he made the decision to spend more time studying the MD-2 before commercializing it — a decision that resulted in Dole's "look[ing] at things for too long." Special App'x 93–94 & n.20. He "hesitate[d] to say how much [the patent rumor] delayed [Dole], if it delayed [Dole] at all." Special App'x 93. Likewise, Douglas Schenk, Maui's president from 1993 until about 2003,

5

testified that during his tenure, Maui's MD-2 propagation was limited by "agricultural practices that were less than optimum for plant propagation," but Maui nonetheless "had the absolute right to do anything it wanted" with the MD-2 pineapple. Special App'x 95. The testimony of Chiquita executives and other competitors also shows that factors other than the 1995 threat letters delayed competitors' entry into the MD-2 market.

The record evidence also belies any conclusion that Dole was genuinely under the impression that the MD-2 pineapple was patented. To the contrary, Dr. Gonzalez, Dole's top scientist, was able to determine through cursory inspection that the CO-2 patent did not cover the MD-2 pineapple. Nor did Del Monte ever claim that the MD-2 was patented during 1995 meetings between its executives and Dole executives regarding a potential sale of the company or in offering documents provided to potential purchasers. While plaintiffs emphasize hearsay testimony that Del Monte threatened Costa Rican MD-2 growers that they could not sell MD-2 pineapples to Del Monte's competitors because of the patent, they fail to show through admissible evidence that any such threats resulted in a competitor's being unable to develop or purchase MD-2 if it wanted to do so. The record is thus devoid of any genuine issue of material fact as to whether confusion about the scope of Del Monte's patent on the pineapple incident to the threat letters caused competitors' delays in entering the market. Because plaintiffs cannot establish this essential element of their claim, we need not address the proper scope of the product market, including whether Dr. Cotterill's opinion on this subject ought to have been admitted.

As to the district court's affirmance of the magistrate judge's ruling denying plaintiff's motion to compel the production of documents withheld on the basis of privilege, plaintiffs argue on appeal that the magistrate judge used an improper legal standard by considering whether the

6

evidence gave the trier of fact a mere"comfortable basis" rather than "probable cause" to believe that a fraud or crime had been committed. *See, e.g.*, *United States v. Jacobs*, 117 F.3d 82, 87 (2d Cir. 1997) ("A party wishing to invoke the crime-fraud exception must demonstrate that there is a factual basis for a showing of probable cause to believe that a fraud or crime has been committed and that the communications in question were in furtherance of the fraud or crime.") However, the magistrate judge spent more than two pages of his opinion laying out the applicable probable cause standard; his single use of the phrase "comfortable basis," Special App'x 8, appears to be nothing more than an attempt to articulate a colloquial understanding of the legal standard. Accordingly, the district court did not abuse its discretion in determining that the magistrate judge's order was not clearly erroneous or contrary to law. *See, e.g.*, *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 116–17 (2d Cir. 2010).

We have considered plaintiffs' remaining arguments and find them to be without merit. Accordingly, for the foregoing reasons, the judgment of the district court is **AFFIRMED.**

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

7