STRAUB, Circuit Judge,
dissenting in part:
In enacting the Employee Retirement Income Security Act of 1974 (“ERISA”), 29 U.S.C. § 1001, et seq., Congress sought to ensure “the continued well-being and security of millions of employees and their dependents” by regulating employee benefit plans. See id. § 1001(a). To achieve this goal, Congress required the fiduciaries of ERISA benefit plans to act in accordance with stringent standards of conduct. See id. § 1001(b). “The fiduciary obligations of the trustees to the participants and beneficiaries of [an ERISA] plan are those of trustees of an express trust — the highest known to the law.” La Scala v. Scrufari, 479 F.3d 213, 219 (2d Cir.2007) (alterations in original) (quoting Donovan v. Bierwirth, 680 F.2d 263, 272 n. 8 (2d Cir.1982) (Friendly, J.)).
Such standards are enforced in part by private litigation. See Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 597 n. 8 (8th Cir.2009) (citing 29 U.S.C. § 1136(b)). Accordingly, the Secretary of Labor (“Secretary”), charged with administering ERISA, “has expressed concern over the erection of unnecessarily high pleading standards in ERISA cases.” Id. (internal quotations omitted). In the Secretary’s view, heightened pleading requirements threaten to obstruct ERISA’s remedial goals. See id.
Against the backdrop of strong statutory protections and the Secretary’s judgment that “unnecessarily high pleading standards” should not be permitted to render such protections moot, the majority in effect embraces a heightened pleading standard which threatens to do exactly that. ERISA should not be gutted by the judicial imposition of a pleading standard with no basis in law. While I agree with the majority that the District Court was correct to dismiss Plaintiffs’ claims for breach of the fiduciary duty to diversify and breach of the duty to act in accordance with the documents and instruments governing the Plan, I would find that Plaintiffs have adequately stated a claim for a breach of the fiduciary duty of prudence. Accordingly, I respectfully dissent in part.
BACKGROUND
Plaintiffs in this action claim that their investment manager, Morgan Stanley Investment Management (“MSIM”)[1], violated ERISA by failing to manage the fixed-income portfolio of the investment Plan at issue with the ERISA-mandated standard of care, skill, prudence and diligence (“Prudence Claim”).
According to Plaintiffs, they instructed MSIM to carry out a low-risk investment strategy with respect to their Plan assets. Specifically, Plaintiffs allegedly promulgated written investment guidelines, which specified that the Plan’s “primary investment objective” was the “preservation of principal with emphasis on long-term growth.” Am. Compl. ¶ 20. In addition, Plaintiffs designated as a performance benchmark what is now known as the Citigroup Broad Investment Grade Index *729 (“Citigroup BIG”). Id. ¶21. Plaintiffs claim that “the selection of the Citigroup BIG index as a benchmark signaled to MSIM that, as an ERISA fiduciary, it was required to execute a low-risk, conservative investment strategy.” Id.
MSIM allegedly departed from the foregoing, conservative investment strategy by placing large amounts of the Portfolio’s assets into high-risk investments. For example, MSIM allegedly invested between 9% and 12.6% of the Portfolio in “non-agency mortgage securities” during the relevant time period. Id. ¶ 23. Such securities failed to meet the underwriting standards of Fannie Mae and Freddie Mac, and thus were not guaranteed. Id. ¶ 22 n. 2. By contrast, the Citigroup BIG had no exposure to non-agency mortgage securities. Id. ¶ 23.
According to Plaintiffs, these and other investments “directly exposed the Plan to the volatility of the subprime mortgage market,” at precisely the time borrower defaults “were skyrocketing and numerous subprime lenders were facing insolvency.” Id. ¶ 29. Plaintiffs claim that MSIM “continued to maintain the fixed-income portfolio’s allocation to ... mortgage securities” “[e]ven as ... many ... problems in the mortgage-backed securities market came to light.” Id. ¶ 43. For example, MSIM invested Plan assets in mortgage securities issued by IndyMac Bank, Bear Stearns, Washington Mutual, and Countrywide, each of which suffered severe losses due to mortgage failures. Id. ¶¶ 31, 36-41. Plaintiffs claim that damages resulting from imprudent investment of the Plan’s assets during the relevant time period exceed $25 million. Id. ¶ 27.
The District Court concluded that Plaintiffs’ Amended Complaint did not sufficiently allege MSIM’s imprudent management of the Plan. It found that the Amended Complaint lacked allegations that MSIM inadequately investigated the merits of its investments, and instead focused on “the poor results of the investments.” (JA 218.)
DISCUSSION

I. Applicable Law and Standard of Review

We test the sufficiency of a complaint by a familiar standard. But in affirming the dismissal of Plaintiffs’ Prudence Claim, the majority here effectively — and contrary to authority — deviates from it. To show why this is so, I briefly review what the Supreme Court has prescribed as the minimum required in order to state a claim upon which relief can be granted.
Rule 8 of the Federal Rules of Civil Procedure provides that a complaint must contain “a short and plain statement of the claim showing that the pleader is entitled to relief.” Fed.R.Civ.P. 8(a)(2). To meet this standard, and thus survive a motion to dismiss under Rule 12(b)(6), “a complaint must contain sufficient factual matter, accepted as true, to ‘state a claim to relief that is plausible on its face.’ ” Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).
“A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.” Iqbal, 556 U.S. at 678, 129 S.Ct. 1937. The plausibility standard is not a “probability requirement.” Id. “[I]t simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence” supporting a plaintiffs claim for relief. See Twombly, 550 U.S. at 556, 127 S.Ct. 1955. A complaint thus need not contain “detailed factual allegations,” see Iqbal, 556 U.S. at 678, 129 S.Ct. 1937; *730 indeed, we have rejected the “contention that Twombly and Iqbal require the pleading of specific evidence or extra facts beyond what is needed to make [a] claim plausible.” Arista Records, LLC v. Doe 3, 604 F.3d 110, 120-21 (2d Cir.2010). “The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a ‘sheer possibility.’ ” Braden, 588 F.3d at 594 (quoting Iqbal, 556 U.S. at 678, 129 S.Ct. 1937). Indeed, “a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely.” Twombly, 550 U.S. at 556, 127 S.Ct. 1955 (internal quotations omitted). This is so because, as the majority itself notes, “a reasonable inference need not be ‘as compelling as any opposing inference’ one might draw from the same factual allegation.” Maj. Op. at 722 n. 19 (quoting N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC, 709 F.3d 109, 121 (2d Cir.2013)).
We review de novo the dismissal of a complaint pursuant to Rule 12(b)(6), accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff. Caro v. Weintraub, 618 F.3d 94, 97 (2d Cir.2010).

II. Plaintiffs’ Prudence Claim Is Adequately Stated

A. Applicable Law

To state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege facts which, if true, would show that the defendant acted as a fiduciary, breached its fiduciary duty, and thereby caused a loss to the plan at issue. 29 U.S.C. § 1109(a); Pegram v. Herdrich, 530 U.S. 211, 225-26, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000). The only element at issue here is whether MSIM breached its fiduciary duty.
An ERISA fiduciary must discharge its duties “with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.” 29 U.S.C. § 1104(a)(1)(B).
ERISA’s “prudent man” standard is an objective one; it focuses on the process of the fiduciary’s conduct preceding the challenged decision. See, e.g., Braden, 588 F.3d at 595; Katsaros v. Cody, 744 F.2d 270, 279 (2d Cir.1984). The standard asks whether the fiduciary, at the time he engaged in the challenged transaction, “employed the appropriate methods to investigate the merits of the investment and to structure the investment.” Henry v. Champlain Enters., Inc., 445 F.3d 610, 618 (2d Cir.2006) (internal quotations omitted). “[T]he thoroughness of a fiduciary’s investigation is measured not only by the actions it took in performing it, but by the facts that an adequate evaluation would have uncovered.” In re Unisys Sav. Plan Litig., 74 F.3d 420, 436 (3d Cir.1996); see also In re: Citigroup ERISA Litig., 662 F.3d 128, 141 (2d Cir.2011).
Where a “fiduciary was aware of a risk to the fund, he may be held liable for failing to investigate fully the means of protecting the fund from that risk.” Chao v. Merino, 452 F.3d 174, 182 (2d Cir.2006).

B. Allegations Regarding MSIM’s Mismanagement of Plan Assets

Reasonable inferences drawn from Plaintiffs’ factual allegations render it at least plausible that the process by which MSIM selected and managed Plaintiffs’ investments was tainted by failure of effort or competence. Because Plaintiffs have alleged sufficient facts to state a claim for breach of the ERISA duty of prudence, *731 the District Court erred in dismissing their Prudence claim.

1. Analysis

The majority acknowledges that a complaint which contains “no factual allegations referring directly to MSIM’s knowledge, methods, or investigations at the relevant times,” Maj. Op. at 718, can survive a motion to dismiss so long as “the court, based on circumstantial factual allegations, may reasonably ‘infer from what is alleged that the process was flawed.’” Maj. Op. at 718 (quoting Braden, 588 F.3d at 596). While the majority rejects the significance of Plaintiffs’ alleged “warning signs,” I would find that, when taken together, these allegations support the reasonable inference that MSIM’s choices failed to meet ERISA’s requirements. See Braden, 588 F.3d at 594 (“the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible.”) (citing Vila v. Inter-Am. Inv. Corp., 570 F.3d 274, 285 (D.C.Cir.2009)).
According to Plaintiffs, MSIM’s mandate as the Plan’s fixed-income investment manager was to manage the Portfolio with a focus on preservation of principal, with an emphasis on long-term growth. The written investment guidelines further designated Citigroup BIG as the applicable investment benchmark; this allegedly “signaled to MSIM that, as an ERISA fiduciary, it was required to execute a low-risk, conservative investment strategy.” Am. Compl. ¶ 21.
MSIM allegedly “abandoned this conservative investment profile to speculate in high-risk, mortgage-backed investments,” id. ¶ 28, by making “high-risk investments ... at precisely the time when defaults of subprime mortgages were skyrocketing and numerous subprime lenders were facing insolvency.” Id. ¶ 29. Moreover, Plaintiffs allege that MSIM “failed to monitor the Plan’s investments to protect the Plan from economic harm.” Id. ¶ 61. According to Plaintiffs, “warning signs” appeared throughout 2007 and 2008, which signaled that the non-agency RMBS securities “were not appropriate for the fixed-income portfolio.” Id. ¶ 35. For example, in 2007, analysts predicted that Morgan Stanley — MSIM’s parent company — would write down $6 billion on the value of similar mortgage securities. In addition, MSIM invested Plan assets in subprime mortgage securities issued by, inter alia, IndyMac, Bear Stearns, and Countrywide. Reports filed by these entities in 2007 reflected (1) the rapid increase in delinquencies and non-performing home loans, id. at ¶ 38; (2) rising defaults “across all mortgage categories,” id. at If 41; (3) the fact that investments backed by risky mortgages had left two of Bear Stearns’s hedge funds “virtually worthless,” id. at ¶40; and (4) predictions that “before it turns around,” the housing downturn would be “the longest and deepest since the Great Depression.” Id. at ¶ 38.
In light of these warning signs, MSIM allegedly “knew or should have known” that exposing the Portfolio to such high-risk mortgage securities was imprudent. Id. at ¶ 34. Yet, Plaintiffs allege, MSIM continued to maintain the Portfolio’s allocation of these risky investments from the fourth quarter of 2007 through 2008. As a result, the Portfolio “significantly] under-perform[ed] relative to the Citigroup BIG benchmark”: in the fourth quarter of 2007, the Portfolio ended the quarter up 0.8%, whereas the Citigroup BIG ended the quarter up 5.7%; for 2008, the Portfolio was down 12%, while the Citigroup BIG was up 7%. Id. at ¶ 26.
While Plaintiffs’ Amended Complaint does not specifically detail the processes by which MSIM allegedly mismanaged the *732 Plan, see, e.g., Am. Compl. ¶ 33 (“Had MSIM managed the fixed-income portfolio appropriately and according to its stated objective and risk level, the losses incurred by the Plan would not have occurred.”), it is nonetheless reasonable to infer from what is alleged “that [MSIM’s] process was flawed.” Braden, 588 F.3d at 596. Plaintiffs allege that MSIM acted imprudently by maintaining investments in high-risk mortgage securities, at a time when MSIM knew or should have known that the market for such securities was collapsing. Moreover, Plaintiffs allege contemporaneous “warning signs” and do not rely on “the vantage point of hindsight.” In re Citigroup, 662 F.3d at 140 (internal quotation marks omitted). Accepting these facts as true, and drawing all reasonable inferences in the light most favorable to the Plaintiffs — as we must on a motion to dismiss — these allegations give rise to a reasonable inference that “the process by which [MSIM] selected and managed the [investments] in the [Portfolio] [was] tainted by failure of effort [or] competence,” Braden, 588 F.3d at 596. Whether or not they would ultimately prevail on their claim, Plaintiffs have — at a minimum— stated allegations which, when read in their favor, make MSIM’s breach of its duty of prudence more than a “mere possibility.”

2. MSIM’s Arguments Are Without Merit

MSIM’s attempt to portray each of Plaintiffs’ allegations as insufficient is unpersuasive.[2] Contrary to the analysis MSIM invites us to undertake, it is well-settled that a complaint must be read “as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible.” Braden, 588 F.3d at 594 (citing Vila, 570 F.3d at 285); see also id. at 598 (stating that courts must undertake a “careful and holistic evaluation of an ERISA complaint’s factual allegations before concluding that they do not support a plausible inference that the plaintiff is entitled to relief’). In any event, MSIM’s arguments are without merit at the pleading stage.
First, MSIM contends that it is “irrelevant” whether, as Plaintiffs claim, the issuers of the mortgage securities in which MSIM invested “lost money” during the relevant time period. Appellee’s Br. at 20-21. According to MSIM, this is so because “the default risk of a mortgage-backed security depends not on the fi-nancials of the issuer, but on the characteristics of the underlying mortgages.” Appellee’s Br. at 20. Whether MSIM’s contention is correct is a factual question ill-suited for resolution at the pleading stage. In any event, where — as Plaintiffs allege — issuers of mortgage-backed securities announce massive losses due to defaults on the loans underlying such securities, it is at least plausible that such losses may say something about the overall risk of those types of securities.
Second, MSIM discounts Plaintiffs’ allegation that Morgan Stanley — MSIM’s parent company — was predicted by analysts to write down $6 billion worth of mortgage-backed securities similar to those in the Portfolio. MSIM faults Plaintiffs for failing to allege that MSIM “had knowledge of the predicted write-down or its bases, or that MSIM had any involvement with Morgan Stanley’s decision to invest in the relevant securities.” Appellee’s Br. at *733 21. As a preliminary matter, whether MSIM in fact knew of its parent’s predicted write-down is “inside information” Plaintiffs likely have no way of knowing “unless and until discovery commences,” Braden, 588 F.3d at 598. In any event, and contrary to MSIM’s argument, Plaintiffs do allege that Morgan Stanley’s predicted write-down, together with other red flags, constituted “warning signs” of which MSIM “knew or should have known.” Am. Compl. ¶¶ 34-35.
Third, MSIM argues that, although Plaintiffs allege that Standard & Poor’s downgraded the credit ratings on $7 billion worth of AH>-A mortgage securities in December 2007, Plaintiffs fail to allege “that any securities held by the [Portfolio ] were downgraded.” Appellee’s Br. at 22. MSIM cites no authority requiring ERISA plaintiffs to plead such evidence' — and do so with such particularity — in order to survive a motion to dismiss. Plaintiffs have alleged facts which, if true, demonstrate the publicly-known volatility of the mortgage securities market. In light of Standard & Poor’s $7 billion downgrade, it is at least plausible that a reasonable fiduciary would have reevaluated its decision to invest in that sector. See, e.g., Armstrong v. LaSalle Bank Nat’l Ass’n, 446 F.3d 728, 734 (7th Cir.2006) (“A [fiduciary] who simply ignores changed circumstances that have increased the risk of loss to the trust’s beneficiaries is imprudent.”).
Similarly, MSIM cites to several district court decisions — many of which do not arise in the ERISA context — for the proposition that industry-wide troubles are insufficient to demonstrate MSIM knew or should have known of the risk associated with the investments at issue. As discussed in part C, infra, “ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences.” Braden, 588 F.3d at 598. Plaintiffs have nonetheless made the common sense allegations that MSIM knew or should have known of the mortgage crisis by virtue of its role as investment manager and its experience in the marketplace. According to Plaintiffs, analysts predicted in 2007 that MSIM’s parent company would write down $6 billion on the value of mortgage securities, Am. Compl. ¶ 37; several issuers of mortgage-backed securities selected by MSIM released troubling announcements regarding mortgage-backed securities throughout 2007, id. ¶¶ 36-41; and in December 2007, Standard & Poor’s reduced its ratings on about $7 billion of Alt-A mortgage securities as a result of a sustained surge in mortgage delinquencies. Id. ¶42. If true, such allegations render it plausible that MSIM knew or should have known of the impending crisis at the relevant time, and questioned whether the Plan’s investments were still sound.
MSIM’s arguments, if correct, suggest that it might well have a compelling defense to offer during the later stages of this litigation. They do not, however, alter the conclusion that Plaintiffs have adequately stated a claim for breach of the duty of prudence imposed by ERISA. To the extent that the majority takes up MSIM’s invitation to assess the strength of Plaintiffs’ allegations, such analysis is premature at this juncture.

C. The Majority’s New Pleading Requirement

In evaluating whether Plaintiffs sufficiently allege that MSIM acted imprudently, the District Court and the majority purport to merely assess whether the Amended Complaint states a plausible claim of imprudence regarding the process by which MSIM made the challenged investment decisions. But in doing so, both *734 impose, sub rosa, a novel heightened pleading requirement.
The majority holds that “a claim for a breach of fiduciary duty under ERISA may survive a motion to dismiss — even absent any well-pleaded factual allegations relating directly to the methods employed — if the complaint ‘alleges facts that, if proved, would show that an adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was improvident.’ ” Maj. Op. at 718 (quoting In re Citigroup, 662 F.3d at 141). But the majority goes on to say that where a plaintiff relies on inferences from circumstantial allegations, “this standard generally requires the plaintiff’ to allege facts showing “that a prudent fiduciary in like circumstances would have acted differently.” Maj. Op. at 720, 727. The majority thus announces a new and unjustified hurdle which ERISA plaintiffs must surmount in order to vindicate their statutory rights. It finds that Plaintiffs are unable to meet this standard because they have inadequately tied the alleged “warning signs” to specific securities held in the Portfolio, Maj. Op. at 721-23, and failed to suggest why MSIM should have sold those investments “at whatever unspecified prices existed during the unspecified period in which it was imprudent to maintain those unspecified investments.” Maj. Op. at 721.
The majority’s heightened pleading requirement finds no support in the only guideposts that matter at the pleading stage: Rule 8 and the standards articulated by the Supreme Court in Twombly and Iqbal. Rule 8 merely requires a complaint to contain “a short and plain statement of the claim showing that the pleader is entitled to relief.” Fed.R.Civ.P. 8(a)(2). I fail to see how the “short and plain statement” standard requires plaintiffs to outline in their complaints a more prudent course of action that the fiduciary should have taken.
Instead, Rule 8 permits a plaintiff to pursue a claim based on allegations which only indirectly show plausibly unlawful behavior, so long as the facts pleaded give the defendant fair notice of the claim, and allow the court to draw the reasonable inference that the plaintiff is entitled to relief. Braden, 588 F.3d at 595 (citing Twombly, 550 U.S. at 570, 127 S.Ct. 1955; Iqbal, 556 U.S. at 678, 129 S.Ct. 1937). To withstand dismissal, then, it is sufficient if the allegations in the complaint, accepted as true, give rise to the reasonable inference that the fiduciary’s process was flawed. See id. at 596. Where, as here, plaintiffs have identified the actions which were allegedly inappropriately risky, defendants are unquestionably on notice as to basis of the claim at issue. The rules of notice pleading require nothing more.
Moreover, the majority’s newly articulated pleading requirement ignores the practical reality that plan participants’ often lack access to relevant information and incentivizes fiduciaries to keep their actions concealed. While ERISA imposes certain disclosure requirements on plan administrators, there is no suggestion that these disclosures address how or why investment decisions were made. See Maj. Op. at 719-20. The consequence of the majority’s holding is that the federal courts will often dismiss claims by ERISA plaintiffs who have not yet had an opportunity to employ appropriate discovery to develop their case. This is not what Congress intended when it enacted ERISA and subjected plan fiduciaries to the highest duties known to law. See Donovan, 680 F.2d at 272 n. 8.
Furthermore, while ERISA plaintiffs may — as the majority suggests — generally have access to plan documents and reports that will provide them “the opportunity to *735 find out how the fiduciary invested the plan’s assets,” Maj. Op. at 720, this does not mean that plaintiffs are somehow obligated to include such information in their complaints to survive a motion to dismiss. In other words', plaintiffs of all stripes may have access to mountains of evidence prior to discovery, but that does not change the fact that at the pleading stage all that is required is “a short and plain statement of the claim” showing an entitlement to relief. See Fed. R. Civ. P. 8(a)(2). The Supreme Court has said that a complaint need not contain “detailed factual allegations.” Iqbal, 556 U.S. at 678, 129 S.Ct. 1937. I am not alone in taking the Court at its word; we have similarly emphasized that Twom-bly and Iqbal do not “require the pleading of specific evidence or extra facts beyond what is needed to make [a] claim plausible.” Arista Records, 604 F.3d at 120-21.
In light of the foregoing, I agree with the majority to the extent it holds that ERISA plaintiffs may state a claim for breach of the duty of prudence by alleging facts that “if proved, would show that an adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was improvident.” Maj. Op. at 718. But in my view, Plaintiffs have met this burden, and cannot be expected to further allege facts “showing that a prudent fiduciary in like circumstances would have acted differently.” Maj. Op. at 720.
CONCLUSION
For the reasons stated above, I would vacate the District Court’s dismissal of Plaintiffs’ Prudence Claim, and remand for further proceedings.
Because I agree that Plaintiffs’ remaining claims were properly dismissed, I join the majority in affirming the dismissal of those claims.

. While the majority refers to Defendant as "Morgan Stanley”, I use the term MSIM so as to distinguish the investment advisor branch of Morgan Stanley from its parent company.

. MSIM begins by arguing that “the [Amended Complaint] contains no allegátions that MSIM’s investment processes were deficient.” Appellee’s Br. at 18. As discussed, however, drawing reasonable inferences in Plaintiffs' favor renders plausible the claim that MSIM’s process was tainted.