15-288-cv
Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharmaceuticals, Inc.,

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2015

(Argued: September 29, 2015          Decided: February 3, 2017)

Docket No.  15-288-CV

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Physicians Healthsource, Inc.,

        Plaintiff-Appellant,

            v.

Boehringer Ingelheim Pharmaceuticals, Inc., Boehringer Ingelheim Corporation, Medica, Inc.

        Defendants-Appellees,

John Does, 1-10,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

B e f o r e:   WINTER, JACOBS, and LEVAL, Circuit Judges.

Appeal from a grant by the United States District Court for the District of Connecticut (Stefan R. Underhill, Judge) of a Rule 12(b)(6) motion dismissing a complaint asserting violations of the Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Protection Act of 2005, 47 U.S.C. § 227.  The principal issue is whether an unsolicited fax inviting doctors to a free dinner meeting featuring a discussion of an ailment -- to which an upcoming product, as yet unapproved by the FDA, was

aimed -- was an "unsolicited advertisement."  We vacate and remand.  Judge Leval joins in the panel's opinion and concurs by separate opinion.

GLENN L. HARA (Aytan Y. Bellin, Bellin & Associates LLC, White Plains, NY, on the brief), Anderson & Wanda, White Plains, NY, for Plaintiff-Appellant.

THOMAS D. GOLDBERG (Bryan J. Orticelli, Day Pitney LLP, Stamford, CT, Matthew H. Geelan, Donahue, Durham & Noonan, P.C., Guilford, CT, on the brief),Day Pitney LLP, Stamford, CT, for Defendants-Appellees.

WINTER, Circuit Judge:

Physicians Healthsource appeals from Judge Underhill's dismissal of its class action complaint asserting violations of the Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Protection Act of 2005, 47 U.S.C. § 227 (the TCPA).  The complaint alleges that appellees (collectively "Boehringer") sent an unsolicited fax invitation for a free dinner meeting to discuss ailments relating to appellees' business.  According to appellant, this fax constituted an "unsolicited advertisement" prohibited by the TCPA.

Judge Underhill dismissed appellant's complaint for failure to state a claim -- holding that no facts were pled that plausibly showed that the fax had a commercial purpose.  While we agree that a fax must have a commercial purpose to be an "unsolicited advertisement," we hold that the district court improperly dismissed appellant's complaint.  Where it is alleged

2

that a firm sent an unsolicited fax promoting a free event discussing a subject related to the firm's business, the complaint is sufficient to state a claim.

We therefore vacate and remand.

BACKGROUND

In reviewing a Fed. R. Civ. P. 12(b)(6) dismissal of a complaint, we accept all factual allegations as true, drawing all reasonable inferences in the plaintiff's favor.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

The complaint alleges that, on April 6, 2010, Boehringer, a pharmaceutical company, sent an unsolicited fax to appellant, inviting one of appellant's doctors to a free "dinner meeting" and discussion entitled, "It's time to Talk:  Recognizing Female Sexual Dysfunction (FSD) and Diagnosing Hypoactive Sexual Desire Disorder (HSDD)."  J. App'x at 24.  The "invitation" stated that

> Boehringer Ingelheim Pharmaceuticals, Inc. cordially invites you to join us for a dinner meeting entitled, It's Time to Talk: Recognizing Female Sexual Dysfunction and Diagnosing Hypoactive Sexual Desire Disorder. Based on recent data from a large US study (PRESIDE), 43% of US women aged > 18 years have experienced a sexual problem in their lives and 9.5% of the same group of women have experienced decreased sexual desire with distress.  This program has been developed to discuss Female Sexual Dysfunction (FSD), including Hypoactive Sexual Desire Disorder (HSDD) including pathophysiology models, epidemiology, and diagnosis.  We hope you will join us for this informative and stimulating program.

Id. The fax provided registration details and revealed that the speaker at the dinner meeting would be David Portman, MD.

On March 30, 2014, appellant filed a class action lawsuit on behalf of more than forty individuals against Boehringer, alleging that the fax violated the TCPA as an "unsolicited advertisement" without a proper opt-out notice. Id. at 11. According to the complaint, the fax was an "unsolicited advertisement" because it "promote[d] the services and goods of [Boehringer]." Id. Appellant sought an award of statutory damages in the minimum amount of $500 for each violation of the TCPA, and to have such damages trebled. Appellant also requested injunctive relief to enjoin Boehringer from sending similar faxes in the future.

Boehringer moved to dismiss, arguing that appellant failed to state a claim under the TCPA because the unsolicited fax was not an advertisement. In its motion to dismiss, Boehringer asked the district court to take judicial notice of public records of the Food and Drug Administration (FDA) -- a request that was unopposed and that the court granted. These records showed that, at the time it faxed appellant, Boehringer had submitted for approval by the FDA to market a drug named Flibanserin. The drug was intended to treat HSDD. Because Flibanserin had yet to be approved by the FDA, Boehringer was forbidden to promote it. See 21 C.F.R. § 312.7(a)(prohibiting, inter alia, pharmaceutical companies from "promoting" drugs not yet approved by the FDA).

4

The district court dismissed the complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharmaceuticals, Inc., No. 3:14-CV-405 (SRU), 2015 WL 144728, at *6 (D. Conn. Jan. 12, 2015). The court interpreted Federal Communications Commission (FCC) regulations as "requir[ing] plaintiffs to show that [an unsolicited] fax has a commercial pretext" for it to violate the TCPA. Id. at *3. The court determined that "[n]othing in the [f]ax indicates that the dinner was a pretext for pitching a Boehringer product or service." Id. at *5. The court noted that, "[e]ven drawing the inference that Boehringer sponsored the dinner in order to inform potential future prescribers of Flibanserin about the existence and nature of HSDD, the hypothetical future economic benefit that the Boehringer defendants might receive someday does not transform the [f]ax into an advertisement." Id.

DISCUSSION

As noted, we review de novo a district court's dismissal of a complaint pursuant to Rule 12(b)(6). See Chambers, 282 F.3d at 152. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). As the Supreme Court has stated,

5

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted) (quoting Twombly, 550 U.S. at 557).

Under the TCPA, it is unlawful for "any person within the United States" to send a fax that is an "unsolicited advertisement" -- unless, inter alia, the fax has an opt-out notice meeting certain requirements. 47 U.S.C. § 227(b)(1)(C). The Act creates a private right of action, providing for statutory damages in the amount of $500 for each violation as well as injunctive relief against future violations. 47 U.S.C. § 227(b)(3).

The parties do not dispute that Boehringer's fax lacked any opt-out notice, and the question is, therefore, whether it was an "unsolicited advertisement." The Act defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5). Exercising its delegated rulemaking authority over

6

the TCPA pursuant to 47 U.S.C. § 227(b)(2), the FCC has promulgated a rule elaborating on the Act's definition of "unsolicited advertisement."  Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991; Junk Fax Prevention Act of 2005, 71 Fed. Reg. 25967, 25973 (May 3, 2006) (the "2006 Rule"). The 2006 Rule states, in relevant part, that

> facsimile messages that promote goods or services even at no cost, such as free magazine subscriptions, catalogs, or free consultations or seminars, are unsolicited advertisements under the TCPA's definition. In many instances, "free" seminars serve as a pretext to advertise commercial products and services. Similarly, "free" publications are often part of an overall marketing campaign to sell property, goods, or services.  For instance, while the publication itself may be offered at no cost to the facsimile recipient, the products promoted within the publication are often commercially available. Based on this, it is reasonable to presume that such messages describe the "quality of any property, goods, or services." Therefore, facsimile communications regarding such free goods and services, if not purely "transactional," would require the sender to obtain the recipient's permission beforehand, in the absence of an [established business relationship].

Id.  The Rule itself comports with the statutory language, which defines offending advertisements as those promoting "the commercial availability or quality of [the firm's] property, goods, or services."  47 U.S.C. § 227(a)(5).

The district court interpreted the Rule as "requir[ing] plaintiffs to show that the fax has a commercial pretext -- i.e., 'that the defendant advertised, or planned to advertise, its

7

products or services at the seminar.'" Physicians Healthsource, 2015 WL 144728, at *3 (quoting Bais Yaakov of Spring Valley v. Richmond, the Am. Int'l Univ. in London, Inc., No. 13-CV-4564 (CS), 2014 WL 4626230, at *3 (S.D.N.Y. Sept. 16, 2014)). We do not disagree. But, at the pleading stage, where it is alleged that a firm sent an unsolicited fax promoting a free seminar discussing a subject that relates to the firm's products or services, there is a plausible conclusion that the fax had the commercial purpose of promoting those products or services. Businesses are always eager to promote their wares and usually do not fund presentations for no business purpose. The defendant can rebut such an inference by showing that it did not or would not advertise its products or services at the seminar, but only after discovery. This interpretation comports with the 2006 Rule. "In interpreting an administrative regulation, as in interpreting a statute, we must begin by examining the language of the provision at issue." Resnik v. Swartz, 303 F.3d 147, 151 (2d Cir. 2002). The 2006 Rule states that "it is reasonable to presume that such messages [advertising free seminars] describe the 'quality of any property, goods, or services,'" potentially violating the TCPA. 2006 Rule, 71 Fed. Reg. at 25973 (quoting 47 U.S.C. § 227(a)(3)).

8

Of course, as other courts have ruled,[1] not every unsolicited fax promoting a free seminar satisfies the Rule. There must be a commercial nexus to a firm's business, i.e., its property, products, or services; that, in our view, is satisfied at the pleading stage where facts are alleged that the subject of the free seminar relates to that business. The Rule does not aim at faxes promoting free seminars per se,[2] but states only that, "[i]n many instances, 'free' seminars serve as a pretext to

---

[1] See Physicians Healthsource, Inc. v. Stryker Sales Corp., 65 F. Supp. 3d 482, 489 (W.D. Mich. 2015); Bais Yaakov of Spring Valley v. Richmond, the Am. Int'l Univ. in London, Inc., No. 13-CV-4564 (CS), 2014 WL 4626230, at *3 (S.D.N.Y. Sept. 16, 2014) ("While the [2006 Rule] could be read to categorize all faxes promoting free seminars as unsolicited advertisements, many courts require plaintiffs to show that the defendant advertised, or planned to advertise, its products or services at the seminar."); Addison Automatics, Inc. v. RTC Group, Inc., No. 12 C 9869, 2013 WL 3771423, at *2 (N.D. Ill. July 16, 2013) ("[F]axes promoting free seminars may be unsolicited advertisements because free seminars are often a pretext to market products or services.") (internal quotation marks omitted); St. Louis Heart Center, Inc. v. Forest Pharms., Inc., No. 4:12-CV-02224, 2013 WL 1076540, at *4 (E.D. Mo. Mar. 13, 2013); Phillips Long Dang, D.C., P.C. v. XLHealth Corp., No. 1:09-CV-1076-RWS, 2011 WL 553826, at *4 (N.D. Ga. Feb. 7, 2011) ("[T]he Court does not read the FCC Promulgation as creating a per se ban on free seminar communications.").

[2] Appellant relies on another provision of the 2006 Rule -- that "applications and materials regarding educational opportunities and conferences sent to persons who are not yet participating or enrolled in such programs are unsolicited advertisements," 2006 Rule, 71 Fed. Reg. at 25973 -- to support its argument that faxes promoting free seminars are per se violations of the TCPA. We are unconvinced. The cited provision targets pretextual materials that promote, for example, enrollment at particular educational institutions; it does not purport to create a per se rule of the sort appellant advances. See 2006 Rule, 71 Fed. Reg. at 25974.

advertise commercial products and services." 2006 Rule, 71 Fed. Reg. at 25973 ("[M]essages that promote goods and services even at no cost, such as . . . free . . . seminars, are unsolicited advertisements under the TCPA's definition."). In a different but relevant context, the Rule states that "a trade organization's newsletter sent via facsimile would not constitute an unsolicited advertisement, so long as the newsletter's primary purpose is informational, rather than to promote commercial products." Id.

Requiring plaintiffs to plead specific facts alleging that specific products or services would be, or were, promoted at the free seminar would impede the purposes of the TCPA. See Gager v. Dell Fin. Servs., LLC, 727 F.3d 265, 271 (3d Cir. 2013) ("Because the TCPA is a remedial statute, it should be construed to benefit consumers."); Physicians Healthsource, Inc. v. Alma Lasers, Inc., No. 12 C 4978, 2012 WL 4120506, at *2 (N.D. Ill. Sept. 18, 2012) ("Congress enacted the TCPA to prevent the shifting of advertising costs to recipients of unsolicited fax advertisements.") (citing H.R. Rep. No. 102-317, at 10 (1991); S. Rep. No. 102–78, at 2, 5 (1991), reprinted in 1991 U.S.C.C.A.N. 1968, 1972 ("[U]nsolicited calls placed to fax machines, and cellular or paging telephone numbers often impose a cost on the called party (fax messages require the called party to pay for the paper used . . .)")). And -- unless plaintiffs actually attended the free seminar -- in many cases it will be difficult

10

for plaintiffs to know whether it was in fact used to advertise a defendant's products or services.  See Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010) ("The Twombly plausibility standard, which applies to all civil actions . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant.") (internal quotation marks omitted).

Two fanciful examples illustrate the distinction.  If a complaint alleged that the Handy Widget Company funded a professorship at a local law school in the name of its deceased founder and faxed invitations on its letterhead to an inaugural lecture entitled "The Relevance of Greek Philosophers to Deconstructionism," the complaint would not state a claim under the TCPA because the Handy Widget Company is not in the business of philosophical musings.  In contrast, if the Handy Widget Company faxed invitations to a free seminar on increasing widgets' usefulness and productivity, a claim under the TCPA would be validly alleged.  Of course, the Handy Widget Company could rebut at the summary judgment stage with evidence showing that it did not feature its products or services at the seminar.

Boehringer's fax advertised a "dinner meeting" to discuss two medical conditions -- Female Sexual Dysfunction (FSD) and Hypoactive Sexual Desire Disorder (HSDD) -- and their "pathophysiology models, epidemiology, and diagnosis."  J. App'x

11

at 24.  As a pharmaceutical company, Boehringer was generally in the business of treating diseases and medical conditions, such as FSD and HSDD.  Moreover, the fax makes clear to the invitee that the dinner meeting was "sponsored by Boehringer Ingelheim Pharmaceuticals, Inc."  Id.  The fax invitation was sent to a doctor, whom Boehringer would presumably hope to persuade to prescribe its drugs to patients.  Therefore, facts were alleged that Boehringer's fax advertised a free seminar relating to its business.

In addition, Boehringer's seeking approval from the FDA for the marketing of Flibanserin is relevant, although not dispositive.  Although not approved, the drug is intended as a remedy for the ailments to be discussed at the event.  To be sure, Boehringer was prohibited from, inter alia, "promoting" an unapproved drug, 21 C.F.R. § 312.7(a), but that prohibition is not necessarily inconsistent with the free dinner's mentioning the possible future availability of the drug.  Nothing in the statute or Rule limits their scope to the advertisement of products or services then available.

In defense, Boehringer can present, inter alia, testimony of the dinner meeting participants as well as provide the meeting's agenda, transcript, presentation slides, speaker list, or any internal emails or correspondences discussing the meeting.  See Physicians Healthsource, Inc. v. Stryker Sales Corp., 65 F. Supp. 3d 482, 492 (W.D. Mich. 2015) (holding that "the TCPA's text does

12

not require a court to put on evidentiary blinders in deciding whether a particular fax amounts to an advertisement" and allowing parties to present evidence beyond the four corners of the fax -- such as presentation slides -- to determine if a fax promoting a free seminar was pretextual).  It is also possible that Boehringer used the seminar to advertise other drugs or services in its inventory -- which would certainly support finding a violation of the TCPA.

CONCLUSION

For the foregoing reasons, we vacate and remand for further proceedings consistent with this opinion.

LEVAL, <u>Circuit Judge</u>, concurring:

I concur in my colleagues' opinion. I agree fully that the Complaint plausibly states a claim under 42 U.S.C. §§ 227(b)(1)(C) and (a)(5), as elucidated by the 2006 Rule promulgated by the Federal Communications Commission (FCC or the Commission), 71 Fed. Reg. 25967, 25973 (May 3, 2006).

I write separately, however, speaking for myself alone, and speaking only to state courts and federal courts outside this circuit, to air a somewhat different possible understanding of the 2006 Rule, which, while supporting the same conclusion as to the sufficiency of the Complaint, may better reflect the text of the Commission's Rule.

The Complaint alleges that the Defendant, Boehringer Ingelheim Pharmaceuticals, Inc., sent an unsolicited fax message (without the required opt-out notice) to the Plaintiff, Physicians Healthsource, Inc. (as well as to other doctors).[1] The fax message invited Dr. Jose Martinez (apparently one of the doctors of Physicians Healthsource) to a free dinner and lecture sponsored by the Defendant, at which David Portman, M.D., would discuss Female Sexual Dysfunction (FSD) and Hypoactive Sexual Desire Disorder (HSDD).[2] At the Defendant's request, in deciding the motions to dismiss the Complaint, the court

---

[1] In this opinion, the Defendants are collectively referred to as the "Defendant."

[2] A note on the fax message indicated that the invitation was extended only to healthcare professionals, and not to their spouses or guests.

1

took judicial notice of records of the Food and Drug Administration (FDA) showing that the Defendant had submitted an application for the FDA's approval to market a new drug (flibanserin) for the treatment of HSDD, the condition that was to be the subject of the free lecture.

The Defendant argued in the district court that because its fax transmission consisted of an invitation to a free dinner and lecture, and did not on its face make any suggestion of a commercial nature or refer in any way to flibanserin, it did not come within the statute's definition of an unsolicited advertisement: "material advertising the commercial availability or quality of any property, goods, or services." 47 U.S.C. § 227(a)(5). The Plaintiff countered that the FCC's 2006 Rule made clear, for purposes of the statute, that an unsolicited facsimile message promoting free goods and services is an unsolicited advertisement. The Plaintiff argued further that, given the Defendant's pending application for FDA approval to market a drug for the treatment of HSDD, and the allegation of an invitation addressed to doctors to hear a medical lecture about HSDD, the Complaint plausibly alleged an overall marketing campaign and commercial purpose to get the doctors to prescribe the Defendant's drug to patients suffering from HSDD, once the Defendant obtained FDA approval for the drug. The district court accepted the Defendant's arguments and dismissed the Complaint.

The majority opinion reverses the district court's dismissal of the Complaint, essentially adopting the Plaintiff's fallback argument— that, in view of the Defendant's intention to market a drug for the treatment of HSDD, its offer of a free seminar for doctors discussing HSDD is plausibly alleged to be a commercially motivated advertisement of its product. On the other hand, the majority opinion rejects the Plaintiff's argument that the FCC's 2006 Rule treats this offer of a free seminar *per se* as an advertisement of "the commercial availability" of a product. It reasons that the fax offering free goods or services would constitute an advertisement only if the offer of the free seminar turned out to be a pretext or prelude for a commercial promotion, and asserts that the Defendant "can rebut such an inference [of intent to promote a commercial product] by showing [after discovery] that it did not or would not advertise its products or services at the seminar." Maj. Op. 8. Although recognizing that "[b]usinesses are always eager to promote their wares and usually do not fund presentations for no business purpose," the opinion asserts that, if the defendant can show after discovery that at the free dinner and seminar no reference whatsoever was made to the Defendant's drug for treatment of HSDD (or any other products or services it offered), the Defendant would prevail in the litigation. *Id.* at 8, 12–13.

I agree fully with the majority's conclusion that the Complaint, as supplemented by the information about the Defendant's commercial product that

3

the Defendant added to the record on the motion to dismiss, plausibly supports an intention on the part of the Defendant to foster future sales of its drug. It seems obvious that, when a pharmaceutical company, which is preparing to market a drug for the treatment of HSDD, invites doctors to a free dinner and lecture on HSDD, the objective of the event is to get doctors to eventually prescribe the company's drug to their patients, even though the company might be forced by legal requirements not to speak about the drug itself (as opposed to the condition) until FDA approval is secured.

I believe, in addition, that other courts might read the FCC's 2006 Rule to mean that, at least when sent by commercial, profit-motivated entities, faxes offering free goods or services are deemed to be advertisements (and "unsolicited advertisements" if sent without the prior permission of the recipient), regardless of whether the offer of free goods and services was a pretext or preliminary to explicit promotion of commercial products and services.

In enacting the Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005, Congress undertook to limit the use in commerce of certain methods of communication that impose costs, hardships, and annoyances on unwilling recipients. Section 227 focuses, in part, on the transmission of "unsolicited advertisement[s]" to "telephone facsimile machine[s]"

4

(fax machines).[3] The sending of "unsolicited advertisements" to a fax machine is expressly prohibited except in specified circumstances (which include the requirement that the message include a notice (conforming to specifications) that the recipient may opt out of further receipt of such messages). *See* 47 U.S.C. § 227(b)(1)(C) ("It shall be unlawful for any person within the United States . . . to send, to a telephone facsimile machine, *an unsolicited advertisement,* unless . . . ." (emphasis added)).[4]

The statute defines "unsolicited advertisement" to mean "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission." *Id.* § 227(a)(5). The statute goes on to direct the FCC to "prescribe regulations to implement the requirements of this subsection" and to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to

---

[3] The menace to the public represented by unsolicited advertisements sent by fax has mercifully diminished since the passage of the Act, as newer means of communication have supplanted the fax and far fewer consumers now possess fax machines. Nonetheless, usage of fax machines continues, and, for those who use them, the problem that led Congress to pass the Junk Fax Prevention Act persists.

[4] An "unsolicited advertisement" may not be sent to a fax machine unless (1) "the sender [has] an established business relationship with the recipient," (2) the "sender obtained the number of the telephone facsimile machine" in a manner permitted by the statute, and (3) the unsolicited advertisement contains a "clear and conspicuous" opt-out notice on the first page which meets various statutory specifications. 47 U.S.C. §§ 227 (b)(1)(C) & (2)(D).

5

which they object." *See id.* §§ 227(b)(2) and (c)(1). The FCC promulgated the 2006 Rule.

The 2006 Rule is not written in the manner of a conventional regulation. It is a rambling 22-page discussion, in which some sentences assert normative rules and definitions, others describe arguments that have been submitted to the agency by commentators and the Commission's responses to them, and yet others explain the Commission's observations and reasoning that led it to its conclusions.

A chapter of the 2006 Rule specifically addresses facsimile messages that contain "Offers for Free Goods and Services," and the question whether such messages constitute "unsolicited advertisements."[5]

---

[5] The pertinent passage reads:

*Offers for Free Goods and Services and Informational Messages*
The Commission concludes that facsimile messages that promote goods or services even at no cost, such as free magazine subscriptions, catalogs, or free consultations or seminars, are unsolicited advertisements under the TCPA's definition. In many instances, "free" seminars serve as a pretext to advertise commercial products and services. Similarly, "free" publications are often part of an overall marketing campaign to sell property, goods, or services. For instance, while the publication itself may be offered at no cost to the facsimile recipient, the products promoted within the publication are often commercially available. Based on this, it is reasonable to presume that such messages describe the "quality of any property, goods, or services." Therefore, facsimile communications regarding such free goods and services, if not purely "transactional," would require the

6

If one reads this passage precisely, sentence by sentence, giving each sentence its natural meaning, it can be read to establish a rule that differs significantly from the majority opinion's interpretation of it.

The first sentence can be read to state a categorical conclusion as to the meaning of "unsolicited advertisement" as applied to faxes that offer free goods or services.

> The Commission concludes that facsimile messages that promote goods or services even at no cost, such as free magazine subscriptions, catalogs, or free consultations or seminars, *are* unsolicited advertisements under the TCPA's definition.

2006 Rule, 71 Fed. Reg. at 25973 (emphasis added).

The next four sentences appear to recount what the Commission observed and how those observations led it to adopt the categorical rule stated in the first sentence. These four sentences explain:

> In many instances, "free" seminars serve as a pretext to advertise commercial products and services. Similarly, "free" publications are often part of an overall marketing campaign to sell property, goods, or services. For instance, while the publication itself may be offered at no cost to the facsimile recipient, the products promoted within the publication are often commercially available. Based on this, it is reasonable to presume that such messages describe the "quality of any property, goods, or services."

*Id.*

---

> sender to obtain the recipient's permission beforehand, in the absence of an [established business relationship].

2006 Rule, 71 Fed. Reg. at 25973.

7

The final sentence of the passage follows the Commission's factual observations described in the prior four sentences with the word, "Therefore," and then essentially restates the categorical rule of the first sentence—that facsimile messages offering free goods and services are treated as advertisements,[6] so that the sender must "obtain the recipient's permission beforehand, in the absence of an [established business relationship]." *Id.*

In view of the apparently categorical assertion of the first sentence (repeated in substance in the final sentence)—that "facsimile messages that promote goods or services even at no cost . . . are unsolicited advertisements under the TCPA's definition"—another court might well disagree with the majority opinion's view that the Rule "does not aim at faxes promoting free seminars *per se*." Maj. Op. 9. Nothing in the text suggests that the Commission's observation of the frequency with which free offers lead to commercial solicitation was intended as limiting the Commission's categorical proposition announced in the first sentence, rather than providing an explanation for it.

---

[6] The final sentence includes the qualification, "if not purely 'transactional.'" This qualification has no bearing on our analysis. The immediately preceding passage of the 2006 Rule explains that "'Transactional' Communications," those "whose purpose is to facilitate, complete, or confirm a commercial transaction that the recipient has previously agreed to enter into with the sender[,] are not advertisements for purposes of the TCPA's facsimile advertising rules." 2006 Rule, 71 Fed. Reg. at 25972.

In addition, a court might conclude that the majority opinion's selective quotation and characterization of the last two sentences of the passage on free goods and services change their meaning. The majority opinion describes the 2006 Rule as stating that, because of the reasonableness of the presumption adopted by the FCC that messages advertising free seminars in fact describe the "quality of any property, goods, or services," such messages "*potentially* violat[e] the TCPA." *Id.* at 8. The 2006 Rule, however, after noting the reasonableness of that presumption, goes on to say that fax messages offering free goods and services "*[t]herefore . . . would require* the sender to obtain the recipient's permission beforehand." 2006 Rule, 71 Fed. Reg. at 25973 (emphasis added). This passage, read literally, says that, unless the recipient gave permission, the fax message offering free goods or services does violate the TCPA—not that it "potentially" violates the TCPA.

The 2006 Rule, in other words, can be read to say, in sum: Because of the frequency, observed by the Commission, that messages offering free goods or services in fact mask or precede efforts to sell something, the Commission has adopted a prophylactic presumption that fax messages offering free goods or services *are* advertisements and thus *are* prohibited by § 277 (unless they are either sent with the consent of the recipient or meet the requirements for the statutory exception).

9

One might ask why the Commission would adopt this presumption rather than letting it be determined in litigation whether one who accepted the offer of free goods or services would ultimately confront an attempt to sell something. The Commission did not explain its reasons. One can well surmise, however, that because the statute generally offers plaintiffs a maximum award of $500 in statutory damages,[7] the statute's efficacy in controlling nuisance faxes would be nullified if a plaintiff needed to spend thousands of dollars in discovery litigation to win a much smaller award. And as to the risk that a sender might be held liable in circumstances where its offer of free goods did not lead to an attempt to sell, the Commission could take comfort in (1) its determination that this would occur infrequently, and (2) the near certainty that the damages award inflicted on the defendant would be negligible—even less than the litigation cost of making a motion to dismiss.

I recognize that there is a significant argument against this literal reading of the Commission's Rule. If this passage is read to apply universally to *all* "facsimile messages that promote goods or services . . . at no cost," this would mean that fax messages sent by charitable, nonprofit entities for the sole purpose of alerting intended beneficiaries to the availability of charitable offerings would incur

---

[7] Plaintiffs may recover their "actual monetary loss" or "$500 in damages for each [ ] violation, whichever is greater." 47 U.S.C. § 227(b)(3)(B). Absent truly exceptional circumstances, $500 will likely far exceed a plaintiff's actual monetary loss caused by receipt of an unsolicited fax.

10

liability. Because the governing statute imposes liability for fax transmissions only on "material advertising the commercial availability or quality of any property, goods, or services," *see* § 227(a)(5), it is at least doubtful whether the Commission can lawfully impose a rule requiring that the statute be read to impose liability for faxes sent by charitable nonprofit organizations with no objective other than to give away free goods or services.

There are, however, answers to this objection. Notwithstanding the breadth of the Commission's language in the first and last sentences of the quoted paragraph concerning Offers for Free Goods and Services, it is doubtful whether the Commission intended this broad categorical rule to apply to offers of free goods and services by nonprofit entities. Both the statute[8] and the 2006 Rule communicate an intention that nonprofits be treated differently, at least in some respects, from commercial entities. In a separate portion of the 2006 Rule, the Commission set forth some discussion of how the statute treats nonprofits, suggesting that nonprofits are not covered by the otherwise categorical rule treating faxes offering free goods and services as advertisements.[9]

---

[8] *See* 47 U.S.C. § 227(a)(4) (defining "telephone solicitation," another form of communication governed by the statute, expressly to exclude "a call or message . . . by a tax exempt, nonprofit organization").

[9] Section 227(b)(2)(F) of the statute authorizes the Commission to issue a regulation exempting nonprofit professional or trade associations from the requirement to include an opt-out notice on unsolicited fax advertisements sent to

While neither the TCPA nor its amendments carve out an exemption for nonprofits from the facsimile advertising rules, the Commission agrees with those petitioners that argue that messages that are not commercial in nature—which many nonprofits send—do not constitute "unsolicited advertisements" and are therefore not covered by the facsimile advertising prohibition. ( . . . [C]onsistent with the language of the TCPA, the Commission does not intend for the clarifications in this Order to result in the regulation of noncommercial speech as commercial facsimile messages under the TCPA regulatory scheme.) The Commission clarifies that messages that do not promote a commercial product or service, including all messages involving political or religious discourse, such as a request for a donation to a political campaign, political action committee or charitable organization, are not unsolicited advertisements under the TCPA. ( . . . [T]he fact that a political message contains an offer to attend a fundraising dinner or to purchase some other product or service in connection with a political campaign or committee fundraiser does not turn the message into an advertisement for purposes of the TCPA's facsimile advertising rules.)

2006 Rule, 71 Fed. Reg. at 25972.

The Commission's observations about nonprofits in this passage—that they send noncommercial messages and that such messages, including, for example, offers to attend fundraising dinners, are not advertisements—seem inconsistent with applying to nonprofits the apparently unqualified rule in the provision regarding Offers of Free Goods and Services. As a result, a court might conclude that the Commission intended the "Free Goods and Services" provision to apply to faxed offers by commercial entities, and not to similar faxes sent by nonprofits. It

their members. The Commission declined to create that exemption, however, in part because of the benefits of the notice to recipients, and in part because inclusion of the notice is not a burdensome obligation. *See* 2006 Rule, 71 Fed. Reg. at 25971.

12

is, furthermore, unlikely that the 2006 Rule's statement about the frequency with which offers of free goods and services are prefatory to commercial advertisement was predicated on the Commission's observation of such offers *by nonprofits*. If a court, therefore, faced a suit brought against a nonprofit, based on a faxed offer to distribute free benefits, the court might conclude that the Commission's 2006 Rule simply does not address that circumstance, so that the case should be adjudicated solely by reference to the provisions of the statute, which would presumably support the conclusion that a nonprofit's fax offering free goods or services was not an unsolicited advertisement.

While I concur in the panel opinion, ruling that the Complaint states a claim, I note that other courts might interpret the Commission's 2006 Rule differently.

13